**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 20 1998**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAULA M. BUCHWALD,

     Plaintiff - Appellee,

v.

UNIVERSITY OF NEW MEXICO
SCHOOL OF MEDICINE,
UNIVERSITY OF NEW MEXICO
BOARD OF REGENTS,
UNIVERSITY OF NEW MEXICO
SCHOOL OF MEDICINE
COMMITTEE ON ADMISSIONS;
DIANE KLEPPER, M.D., individually
and as Co-Chairperson, Committee on
Admissions; ALONZO C. ATENCIO,
Ph.D., individually and as Co-
Chairperson, Committee on
Admissions,

     Defendants - Appellants.

Nos. 96-2121 & 96-2129

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-95-753-LH)**

---

Paul R. Ritzma (Paul M. Schneider with him on the briefs), New Mexico Legal
Bureau/RMD, Santa Fe, New Mexico, for Defendants - Appellants.

Christina J. Bruff, Law & Resource Planning Associates, Inc., Albuquerque, New
Mexico, for Plaintiff - Appellee.

Before **BRISCOE** , **McKAY** and **LUCERO** , Circuit Judges.

---

**LUCERO** , Circuit Judge.

---

The University of New Mexico School of Medicine ("UNMSM") has a stated policy that, all other things being equal, it will favor long-term residents over short-term residents in its admissions process. The district court first found this preference to violate "clearly established" law concerning the fundamental right to travel and therefore ruled that the individual defendants, Doctors Klepper and Atencio, were not entitled to qualified immunity. A week later, the district court issued an injunction prohibiting UNMSM from considering length of residency in future admission decisions. This interlocutory appeal followed. The questions before us on appeal are: (1) does Ms. Buchwald have standing to seek the injunction entered by the district court in its second order; (2) did the district court err in finding that no defendants are entitled to Eleventh Amendment immunity; and (3) did the district court err in finding that Klepper and Atencio are not entitled to qualified immunity in their individual capacities? We reverse in part and affirm in part.

## I

The facts relevant to this appeal are undisputed. Paula Buchwald moved to New Mexico in 1991. She submitted an application to UNMSM seeking

admission to the 1993-94 entering class. Unsuccessful, Buchwald re-applied the following year for the 1994-95 class. When that application was denied, she re-applied for admission to the 1995-96 class. Once again, she was rejected. After each denial, Buchwald interviewed with UNMSM to ascertain how she might strengthen a future application. At each interview, Buchwald's relatively short residency in the state of New Mexico was cited as an obstacle to her admission.

Defendants do not dispute that UNMSM uses duration of residency as a "plus factor" in evaluating applicants. In fact, according to UNMSM's "Admissions Policy Statement":

> An important non-performance factor in considering students for admission . . . is the residency status of the student. As a state-supported institution in a state where health care needs are great, the medical school feels strongly that most of the accepted applicants should be residents of New Mexico. Further, the Committee on Admissions tends to give preference to long-term residents of the state and graduates of New Mexico high schools, other qualifications being equal.

Appellants' App. at 91. The Policy Statement justifies favoring long-term residents in part by pointing to the "unique problems in the delivery of health care" present in the state of New Mexico. See id. at 92.

After her third rejection, Buchwald filed the instant action against UNMSM, its Regents, the Committee on Admissions, and the two chairpersons of the admissions committee seeking compensatory damages as well as declaratory and injunctive relief. She claims that defendants' admissions policy violates the

Commerce Clause of the United States Constitution, as well as her equal protection and due process rights. The focal point of Buchwald's claims is the alleged violation of her "fundamental right to interstate migration." Defendants filed for summary judgment, arguing that the official defendants are entitled to Eleventh Amendment immunity and the individual defendants, Klepper and Atencio, to qualified immunity. The plaintiff counterfiled for summary judgment as to her claim for declaratory relief.

On May 23, 1996, the district court ruled that UNMSM, its Regents, the Committee on Admissions, and the two individual defendants sued in their official capacity were immune from plaintiff's damages claim. However, the district court refused to extend qualified immunity to Klepper and Atencio in their individual capacities because it found, first, that UNMSM's consideration of length of residency in its admissions policy violated clearly established law and, second, that plaintiff raised a genuine issue of fact as to whether Klepper and Atencio violated that right. One week later, the district court found UNMSM's durational residency criterion constitutionally infirm and enjoined the school from any further use of that admissions factor. Defendants appeal.

**II**

Plaintiff challenges our jurisdiction to hear this case due to the absence of a final judgment. Appeal is not generally permissible until after the district court

has issued a final decision, see 28 U.S.C. § 1291, but there are limited exceptions to that rule. A defendant may immediately appeal "[i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions." 28 U.S.C. § 1292(a)(1). Although the plaintiff's concerns about the potential for delay are understandable, we have jurisdiction to review the injunction issued on May 30, 1996.

We may also review the district court's denial of qualified immunity to Klepper and Atencio. When a plaintiff brings an action against a government official in his or her individual capacity, "that official is generally provided with a qualified immunity against civil damages liability." Anderson v. Creighton, 483 U.S. 635, 638 (1987). In order to avoid summary judgment based on a defendant's assertion of qualified immunity, a plaintiff must show not only that the defendant violated her rights, but also that the rights violated were "clearly established" at the time of the violation. Id. at 639.

A denial of qualified immunity may be immediately appealed because immunity protects defendants not only from liability but also from having to endure the "burdens of litigation." See Behrens v. Pelletier, 516 U.S. 299, 306 (1996). The rule is not absolute; we have no jurisdiction to review a denial of qualified immunity when the interlocutory appeal focuses in whole or in part on the resolution of factual issues. See Johnson v. Jones, 515 U.S. 304, 313 (1995);

see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) (holding denial of a claim of immunity "immediately appealable" to the extent that it turns on an issue of law). In this case, the district court denied qualified immunity because it found that the contours of the right to travel were "clearly established" and that plaintiff raised a genuine issue of material fact as to whether UNMSM had violated that right. Under Johnson, therefore, we may review the district court's finding that plaintiff has such a right or that such right was "clearly established." See Behrens, 516 U.S. at 313.

### III

UNMSM argues on appeal that plaintiff lacks standing to seek her requested relief. "Standing is a jurisdictional issue that may be raised by the court at any time." Wilson v. Glenwood Intermountain Properties, Inc., 98 F.3d 590, 592-93 (10th Cir. 1996). In order to satisfy Article III standing, plaintiff must establish three elements: (1) "injury in fact"—meaning "the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal relationship between the injury and the challenged conduct"—meaning that the "injury fairly can be traced to the challenged action of the defendant"; and (3) "a likelihood that the injury will be redressed by a favorable decision"—meaning that the "prospect of obtaining relief from . . . a favorable ruling is not too speculative." Northeastern

- 6 -

Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville,
508 U.S. 656, 663-64 (1993) (internal citations and quotations omitted). We do
not address the merits of plaintiff's claims in our determination of standing
because "[t]he fundamental aspect of standing is that it focuses on the party
seeking to get his complaint before a federal court and not on the issues he wishes
to have adjudicated." Flast v. Cohen, 392 U.S. 83, 99 (1968).

## A. Relief Sought in Complaint

Injury in fact in an equal protection case like this may simply be the
existence of a government-erected "barrier that makes it more difficult for
members of one group to obtain a benefit than it is for members of another
group." City of Jacksonville, 508 U.S. at 666. It is not necessary for plaintiff to
show that she would have received the benefit but for the operation of the policy,
because the injury is the imposition of the barrier itself. See id. Here, defendants
admit favoring long-term over short-term residents, all other qualifications being
equal, which by itself is therefore a sufficient demonstration of injury in fact.
Because it is clear that defendant's stated policy "caused" the plaintiff to compete
at a disadvantage vis-a-vis long-term residents, we have little doubt that, were the
district court to award damages, plaintiff's injury would likely be redressed.[1] In

---

[1] This does not resolve the issue of whether defendants are immune from
civil damages liability. See infra Section IV.

addition, given that the district court found a genuine issue of material fact as to whether the disputed preference was the dispositive factor for plaintiff's rejection, plaintiff also has standing to seek a prospective injunction ordering her admission to the school.   Cf. Wilson , 98 F.3d at 593 ("[A] person who fails to satisfy lawful, nondiscriminatory requirements or qualifications for the benefit lacks standing to raise claims of discrimination in the denial of the benefit."). Accordingly, plaintiff has standing to pursue these forms of relief.

### B.  Relief Granted by District Court

Although the district court had not yet determined whether Buchwald was entitled to an injunction ordering her admission to the school, it did grant her a different form of prospective relief—namely, a permanent injunction prohibiting UNMSM from considering duration of residency in future admissions decisions and a declaration that the present admissions policy is unconstitutional.     We are not persuaded, however, that plaintiff has standing to seek that specific form of prospective relief.

Though seemingly paradoxical, plaintiff's standing to seek an injunction ordering her admission to the school based solely on her allegations of       past misconduct does not entail standing to seek an injunction prohibiting       future use of the disputed preference.  To receive forward-looking injunctive or declaratory relief of this latter type, it is insufficient for Buchwald to claim that she was

harmed by the policy in the past.     See Adarand Constructors, Inc. v. Pena    , 515

U.S. 200, 210-11 (1995);    Phelps v. Hamilton   , 122 F.3d 1309, 1315 (10th Cir.

1997) (citing   Facio v. Jones  , 929 F.2d 541, 544 (10th Cir. 1991)).  Critically, she

is additionally required to demonstrate the "imminence" of her injury by making

"an adequate showing" that she will re-apply to UNMSM and will thus be

evaluated under the disputed policy again "in the relatively near future."

Adarand , 515 U.S. at 211.  In her complaint, plaintiff seeks a declaratory

judgment that defendants' policy violates her constitutional right to interstate

travel, an injunction placing her in the 1995-96 entering class at UNMSM, and

compensatory damages.  Yet, the substance of her complaint deals only with her

three past rejections.  There is no evidence in the record on appeal that plaintiff

will continue to apply to UNMSM in the near future or otherwise.  Accordingly,

we must conclude that Buchwald fails to demonstrate a "real and immediate threat

that [she] would again suffer similar injury in the future."     See id. (internal

quotation omitted).  We must therefore vacate the district court's order inasmuch

as it enters an injunction against UNMSM prohibiting any further consideration of

duration of residency and forward-looking declaratory relief that defendants'

current policy violates the constitution.     [2]

---

[2]   We leave to the district court's discretion whether plaintiff may amend
her complaint on remand to include a prayer for a future prohibitory injunction
(continued...)

**IV**

UNMSM, its Regents, the Committee on Admissions, and the two individual defendants sued in their official capacity argue on appeal that the district court erred in failing to provide them with Eleventh Amendment immunity against all plaintiff's claims. Because the district court granted all the official defendants Eleventh Amendment immunity against the damages claims in its May 23 order, which determination is not challenged by plaintiff,[3] the only remaining

_____

[2] (...continued)
and supplement the record to demonstrate that she intends to continue applying to UNMSM.

[3] Specifically, plaintiff concedes that the institutional defendants are "arms of the state" for Eleventh Amendment purposes and that, although the Eleventh Amendment does not apply to her claims for forward-looking injunctive and declaratory relief against Klepper and Atencio in their official capacities, those officials are entitled to immunity from her damages claims. Though that concession is not binding on this court, see In re American Ready Mix, Inc. , 14 F.3d 1497, 1499 (10th Cir. 1994), it is well taken in the circumstances of this case. To determine whether an entity is eligible for Eleventh Amendment immunity, we engage in a two-part inquiry: (1) what "degree of autonomy [is] given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state"; and (2) to what extent does the agency rely on funding from the state treasury as opposed to independent funding. V-1 Oil Co. v. Utah State Dep't of Pub. Safety , 131 F.3d 1415, 1420 n.1 (10th Cir. 1997) (quoting Haldeman v. Wyoming Farm Loan Bd. , 32 F.3d 469, 473 (10th Cir. 1994)). Although the applicability of the Eleventh Amendment is a question of federal law, that determination may only be made after "considering the provisions of state law that define the agency's character." Regents of the Univ. of Cal. v. Doe , 117 S. Ct. 900, 904 n.5 (1997).
The University of New Mexico is defined as a "state educational institution" under the New Mexico Constitution, N.M. Const. art. XII, § 11, which further provides that "[t]he . . . universities . . . provided for by this constitution

(continued...)

- 10 -

immunity issue is whether the district court erred in refusing to hold that the

Eleventh Amendment bars plaintiff's request for declaratory relief and an

injunction ordering her admission to UNMSM. [4]

---

[3] (...continued)
shall forever remain under the exclusive control of the state," id. § 3.  In addition, New Mexico law defines "state agency" as "any department, institution, board, bureau, commission, district or committee of government of the state of New Mexico and means every office or officer of any of the above."  N.M. Stat. Ann. § 6-3-1.  Moreover, UNMSM relies extensively on appropriations from the state in order to fund its educational and extracurricular programs.  See, e.g., General Appropriation Act of 1998, 1998 Adv. Legis. Serv. ch. 116, § 4 (setting forth appropriations for the 1999 fiscal year).  Consequently, we have no doubt that UNMSM, its Regents, and the Committee on Admissions are "arms of the state," entitled to Eleventh Amendment immunity.  See Korgich v. Regents of the N.M. Sch. of Mines, 582 F.2d 549, 551 (10th Cir. 1978) (analyzing New Mexico state law and concluding that Board of Regents of New Mexico School of Mines, as institution of higher learning, is entitled to Eleventh Amendment immunity); see also Watson v. University of Utah Med. Ctr., 75 F.3d 569, 575 (10th Cir. 1996) ("Our cases have consistently found state universities are arms of the state.").  Moreover, we agree with plaintiff that Klepper and Atencio in their official capacities are immune from her damages claims.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985); V-1 Oil, 131 F.3d at 1421; see also California v. Deep Sea Research, Inc., 118 S. Ct. 1464, 1470 (1998) ("According to this Court's precedents, . . . a state official is immune from suit in federal court for actions taken in an official capacity.") (citing Smith v. Reeves, 178 U.S. 436 (1900)).

[4] Defendants argue on appeal that the district court reversed its grant of summary judgment with respect to damages one week after it had so ordered when it refused to grant summary judgment as to all claims and granted plaintiff "declaratory and injunctive relief against all defendants."  Appellants' Br. at 31.  We disagree.  The May 30 order, which entered the prohibitory injunction against defendants, did nothing to alter the court's previous ruling.  The institutional defendants and the individual defendants sued in their official capacity remain immune against all claims for damages.  Any appeal of that ruling is not properly before this court.  See Clemens v. Kansas, 951 F.2d 287, 288 (10th Cir. 1991) (no interlocutory appeal from a grant of Eleventh Amendment immunity).

- 11 -

To the extent that plaintiff seeks a declaration that defendants violated her rights by not admitting her to UNMSM, her claims are barred by the Eleventh Amendment. See Johns v. Stewart, 57 F.3d 1544, 1553 (10th Cir. 1995) (holding that Eleventh Amendment bars federal court from ordering notice or declaratory relief in a suit against the state "unless it is ancillary to a judgment awarding prospective injunctive relief") (citing Green v. Mansour, 474 U.S. 64, 70-74 (1985)). Plaintiff has requested more than declaratory relief, however; she also seeks a prospective injunction ordering her immediate placement into UNMSM. [5] In that regard, plaintiff argues that the exception enunciated in Ex Parte Young, 209 U.S. 123 (1908), allows her to pursue prospective equitable relief when there is an ongoing constitutional violation.

Ex Parte Young recognizes an exception to Eleventh Amendment immunity under which a state officer may be enjoined from "taking any steps towards the

_____

[5]   Defendants argue that because Buchwald seeks only to remedy past wrongs—i.e., UNMSM's refusal to admit her—the relief requested is exclusively non-prospective. We disagree. The existence of a past harm does not convert a prospective injunction into retrospective relief barred under the Eleventh Amendment. See Russell v. Dunston, 896 F.2d 664, 668 (2d Cir. 1990). Just as claims for reinstatement are treated as prospective relief when the plaintiff alleges that he or she was terminated for unconstitutional reasons, see id.; Warnock v. Pecos County, 88 F.3d 341, 343 (5th Cir. 1996), so is the claim for an injunction seeking admission to a school that has allegedly denied admission on unconstitutional grounds, cf. Regents of the Univ. of Cal. v. Bakke, 438 U.S. 265, 320 (1978) (affirming order directing plaintiff's admission to the medical school because school could not establish that plaintiff would have been denied admission but for the unlawful special admissions program).

enforcement of an unconstitutional enactment, to the injury of complainant." 209 U.S. at 159. The exception enables federal courts "to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 105 (1984) (quoting Ex Parte Young, 209 U.S. at 160). The Ex Parte Young exception, however, is a narrow one. First, there must be an "ongoing violation of federal law." Johns, 57 F.3d at 1552. Second, "[i]t applies only to prospective relief" and may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past. Puerto Rico Aqueduct, 506 U.S. at 146. Finally, it "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Id.[6] In this case, plaintiff has alleged an ongoing

_____

[6] Another, more recent, limit to the Ex Parte Young doctrine prohibits us from granting prospective equitable relief when that relief "'implicates special sovereignty interests'" of the state. ANR Pipeline Co. v. LaFaver, Nos. 96-3250 & 96-3345, slip op. at 27 (10th Cir. July 21, 1998) (quoting Idaho v. Coeur d'Alene Tribe, 117 S. Ct. 2028 (1997)). This is an exception to the rule that a plaintiff who seeks prospective relief against individual state officers in a federal forum based on a federal right is not barred by the Eleventh Amendment. See Coeur d'Alene, 117 S. Ct. at 2038 (principal opinion of Kennedy, J. (joined by Rehnquist, C.J.)); id. at 2045 (O'Connor, J., concurring in part and concurring in the judgment (joined by Scalia and Thomas, JJ.)); id. at 2048 (Souter, J., dissenting (joined by Stevens, Ginsburg, and Breyer, JJ.)). In those unique circumstances where a plaintiff's action affects the sovereign interests of a state that the Eleventh Amendment was meant to protect, see id. at 2041 (majority holding that plaintiff's action would in effect divest state of sovereign control over its submerged lands); ANR Pipeline, slip op. at 36 ("[I]t is impossible to imagine that a state government could continue to exist without the power to

(continued...)

- 13 -

constitutional violation in the form of her continued exclusion from UNMSM.

Thus, although the Ex Parte Young exception does not permit plaintiff to subject UNMSM, its Regents, or the Committee on Admissions to suit because they are state agencies, plaintiff may maintain an action against the individual defendants in their official capacities to the extent she seeks a prospective injunction ordering her admission into UNMSM. [7] We therefore conclude that Klepper and Atencio are not immune from plaintiff's claims insofar as she is seeking a future injunction ordering her admission to UNMSM. [8]

---

[6] (...continued)
tax."), the Ex Parte Young exception does not apply. Here, there is no suggestion that plaintiff's requested relief will affect the core aspects of New Mexico's sovereignty. There is certainly no threat that the New Mexico government would cease to exist without UNMSM's disputed policy. See ANR Pipeline, slip op. at 36. Moreover, most government policies do not affect core aspects of a state's sovereignty. See Coeur d'Alene, 117 S. Ct. at 2040 (majority holding that Tribe's suit "unusual" because it "implicates special sovereignty interests"). We therefore see no reason to extend the Coeur d'Alene exception to the situation at hand.

[7] Because the district court did not reach this issue below, we express no view on the merits of plaintiff's claim for an injunction. The only issue before us is whether—or which—defendants are entitled to Eleventh Amendment immunity.

[8] Were plaintiff to receive declaratory relief that is "ancillary" to the injunction she seeks, that declaration would be subject to the same Ex Parte Young analysis as the injunction. See Johns, 57 F.3d at 1553.

- 14 -

## V

State officials performing discretionary functions are generally immune to civil damages liability when sued in their individual capacities.        See Anderson, 483 U.S. at 638.  This doctrine of qualified immunity protects "government officials performing discretionary functions . . . from 'liability for civil damages insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"        Wyatt v. Cole, 504 U.S. 158, 166 (1992) (quoting     Harlow v. Fitzgerald   , 457 U.S. 800, 818 (1982)).  The doctrine is meant to "provide[] ample protection to all but the plainly incompetent or those who knowingly violate the law."        Malley v. Briggs  , 475 U.S. 335, 341 (1986).

To survive summary judgment "[w]hen a defendant raises the defense of qualified immunity, plaintiff must show the law was clearly established when the alleged violation occurred and must come forward with facts or allegations sufficient to show the official violated the clearly established law."        V-1 Oil Co. v. Means , 94 F.3d 1420, 1422 (10th Cir. 1996).  The district court rejected the defendants claim to qualified immunity because it found that the law concerning the right to travel was "clearly established in 1982" and there were genuine issues

of material fact concerning whether defendants had violated that right. [9] See Appellants' App. at 209-10. We review that decision de novo. See Liebson v. New Mexico Corrections Dep't, 73 F.3d 274, 275 (10th Cir. 1996).

To demonstrate that a right is clearly established, plaintiff must show that "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640

---

[9] Plaintiff also argues defendants violated her due process rights and the dormant Commerce Clause. It is unclear from the district court's May 23 opinion whether summary judgment on qualified immunity was granted or denied with respect to these theories. However, Buchwald's due process claim does not allege a violation and thus cannot have validly served as a basis for denial of qualified immunity. Plaintiff relies on Vlandis v. Kline, 412 U.S. 441 (1973), to support her due process claim. In Vlandis, the Supreme Court held "a permanent irrebuttable presumption of nonresidence . . . is violative of the Due Process Clause." Id. at 453. Although this circuit has not employed the "irrebuttable presumption" doctrine, we have made it clear it is appropriately applied only in cases where a controlling factual question is decided against the plaintiff by a conclusive presumption. See Mogle v. Sevier County Sch. Dist., 540 F.2d 478, 484-85 (10th Cir. 1976). Although defendants admit the duration of plaintiff's New Mexico residency was considered in determining the likelihood she would stay and practice medicine in New Mexico upon graduation, plaintiff does not contend, and the record does not support the assertion, that defendants conclusively determined she would leave New Mexico upon graduation based on her short-term residency.

Additionally, plaintiff argues that defendants' actions violate the dormant Commerce Clause. This claim fails to state a constitutional violation that could abrogate qualified immunity. The University of New Mexico's educational activities constitute participation in the market for educational services, not regulation of that market. Thus the policies in question fall under the "market participant" exception to the dormant Commerce Clause. See Reeves, Inc. v. Stake, 447 U.S. 429, 436-39 (1980).

- 16 -

(emphasis added); see Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990) ("The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited."); see also Malley, 475 U.S. at 341 (holding that immunity should be recognized if officials of "reasonable competence could disagree on this issue").

Reviewing the relevant decisions of the Supreme Court and our Circuit, we conclude that Buchwald fails to establish that defendants violated clearly established law. We reach that conclusion for two reasons: (1) a competent administrator could reasonably believe that UNMSM's policy would be subject only to rational basis review, and thereby be legally sustainable; and (2) under the Supreme Court's decision in Regents of the Univ. of Cal. v. Bakke, 438 U.S. 265 (1978), it was not unreasonable to believe that using duration of residency as a plus factor in the admissions process is constitutionally permissible.

**A**

"When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. Generally, a law will survive that scrutiny if the distinction rationally furthers a legitimate state purpose." Hooper v. Bernalillo County Assessor, 472 U.S. 612, 618 (1985). However, "classifications affecting

fundamental rights are given the most exacting scrutiny." Clark v. Jeter, 486 U.S. 456, 461 (1988) (internal citation omitted).  Here, plaintiff argues that UNMSM's policy violates her fundamental right to travel.

It is not a simple task to determine whether a state policy implicates the right to travel.  In general, "a state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." Attorney Gen. of N.Y. v. Soto-Lopez, 476 U.S. 898, 903 (1986) (plurality opinion) (internal quotations and citations omitted).  Right to migrate cases, like the one at bar, are typically reviewed under the latter, indirect approach because they create distinctions that result in the unequal distribution of rights and benefits to bona fide residents.  See id.

However, decisions involving the fundamental right to travel have not firmly established its origins or textual bases.  See id. at 902. [10]  This failure to ground the right in a textual source has created uncertainty in its application.  See Zobel v. Williams, 457 U.S. 55, 73 (1982) (O'Connor, J., concurring); Gregory B. Hartch, Wrong Turns: A Critique of the Supreme Court's Right to Travel Cases,

_____

[10]  "It has been variously assigned to the Privileges and Immunities Clause of Article IV, to the Commerce Clause, and to the Privileges and Immunities Clause of the Fourteenth Amendment.  The right has also been inferred from the federal structure of government adopted by our Constitution."  Soto-Lopez, 476 U.S. at 902 (plurality opinion) (internal citations omitted).

21 Wm. Mitchell L. Rev. 457, 463 (1995); <u>see generally</u> William Cohen,

<u>Discrimination Against New State Citizens: An Update</u>, 11 Const. Commentary 73

(Winter 1994) (arguing that the "doctrinal confusion" surrounding the right to

travel cases would be eliminated by grounding the analysis of the right in the

Citizenship Clause of the Fourteenth Amendment).  The determination of whether

a disputed policy actually penalizes the right to travel is therefore open to debate

due to the scant consensus on the values the right is meant to protect.  <u>See</u> Cohen,

<u>supra</u>, at 77-78.

As a consequence, the Supreme Court has been reluctant to identify when a

state-created classification penalizes the right to travel.  Instead, it has avoided

the question either by determining the purposes advanced by the government are

illegitimate or, if legitimate, that the created distinction does not even rationally

further the stated goal.  <u>See, e.g.</u>, <u>Hooper</u>, 472 U.S. at 622-23 (concluding that

state had not advanced any legitimate purpose for drawing distinction between

long- and short-term residents);  <u>Zobel</u>, 457 U.S. at 61-63 (holding that state's

desire to reward past contributions of its citizens is not legitimate state purpose

and concluding that legitimate purposes proffered were not rationally related to

distinction based on duration of residency);  [11] <u>see also</u> <u>Soto-Lopez</u>, 476 U.S. at

---

[11]    In finding that the law "was clearly established in 1982," the district
court relied on the statement in    <u>Zobel</u> that permitting "the states to divide citizens
(continued...)

- 19 -

912-13 (Burger, C.J., concurring) (criticizing plurality for adopting a strict scrutiny standard without first determining whether disputed classification would survive rational basis review); see generally Ashutosh Bhagwat, Purpose Scrutiny in Constitutional Analysis, 85 Cal. L. Rev. 297, 312 & n.54 (1997) (gathering right to travel cases that engage in purpose scrutiny). In the same manner, the Court has upheld durational residency classifications when impressed by the legitimacy of the purposes advanced. See, e.g., Sosna v. Iowa, 419 U.S. 393, 406 (1975) (distinguishing durational residency cases in which "budgetary or recordkeeping considerations . . . were held insufficient to outweigh the constitutional claims of the individuals").

In this case, defendants argue that the distinction was employed as a proxy for selecting those candidates likely to return to the state of New Mexico and supply needed medical care to underserved areas of the state. Contrary to

---

[11] (...continued)
into expanding numbers of permanent classes . . . would be clearly impermissible." 457 U.S. at 64. That statement, however, can be understood as limited to the context of the state purposes considered by the Zobel court. Zobel focused on the impermissibility of allowing a state to distribute benefits unequally simply to reward its long-term citizens for "past contributions." See id. ("Alaska's reasoning could open the door to state apportionment of other rights, benefits, and services according to length of residency."). Here, however, defendants' proffered purpose is entirely unrelated to rewarding long-term citizens. Indeed, its ultimate purpose—to protect public health—is manifestly of benefit to all residents of the state, no matter how recently-arrived or long-established.

plaintiff's argument, we conclude that this justification is not only legitimate, but also compelling. See Bakke, 438 U.S. at 310 ("It may be assumed that in some situations a State's interest in facilitating the health care of its citizens is sufficiently compelling to support the use of a suspect classification.") (Powell, J.). New Mexico's policy seeks to provide medical care to all residents of the state, regardless of their duration of residency. Given the evenhandedness of this purpose, and the strong role that the purpose plays in right to travel analysis, it cannot have been unreasonable for Klepper and Atencio to believe the policy would not be subject to heightened scrutiny. Further, although the record contains evidence that duration of residency is not the best predictor of where a physician will choose to establish a practice, see Appellant's App. at 102 (Dep. of Dean Paul Roth), such evidence hardly makes it irrational to use duration of residency in this manner.

## B

Even were we to conclude that Zobel clearly establishes UNMSM's policy is subject to strict scrutiny, plaintiff still would not prevail because competent administrators could reasonably disagree on whether UNMSM's admission policy would withstand such scrutiny. See Malley, 475 U.S. at 341. To survive strict scrutiny, the disputed policy must be narrowly tailored to serve a compelling government interest. See Smith v. Paulk, 705 F.2d 1279, 1284 (10th Cir. 1983).

- 21 -

Given our conclusion that public health is a compelling government interest, see Bakke, 438 U.S. at 310, the only question before us is whether a competent administrator could believe that UNMSM's policy was narrowly tailored to promote the goal of admitting applicants likely to practice in New Mexico.

Defendants argue that the Bakke decision authorizes the use of durational residency as a "plus" factor to select candidates likely to improve public health in the state. The district court disagreed, stating that the Bakke Court was "exceptionally divided," that four members of the Court never reached the constitutional issue, and that four other justices only approved the use of race and ethnicity as a subfactor when needed to "'remedy disadvantages cast on minorities by past racial prejudice, at least when appropriate findings have been made by judicial, legislative, or administrative bodies with competence to act in this area.'" Appellant's App. at 210-11 (quoting Bakke, 438 U.S. at 325). The question before us, however, is not whether defendant's policy is permissible under Bakke; rather, the issue is whether defendants could reasonably have relied on Bakke to adopt the preference at issue in this case.

Bakke holds that a university may not set aside a certain number of admission places on the basis of race or ethnicity in an attempt to diversify its student body. See 438 U.S. at 319-20. Discussing viable alternatives to a strict set-aside, however, Justice Powell concluded that, so long as every applicant was

permitted to compete for every seat, an admissions plan under which an applicant received a "plus" for racial or ethnic background would be narrowly tailored to achieve a school's compelling interest in diversity. See id. at 318-19. Four justices agreed with Powell to the extent that his opinion "affirms the constitutional power of Federal and State Governments to act affirmatively to achieve equal opportunity for all." Id. at 324 (Brennan, J., concurring in part and dissenting in part). Despite the absence of a clear majority opinion, Bakke remains the leading jurisprudential authority in this area and there is no Tenth Circuit authority that provides further guidance.

Here, we are faced with a Bakke-type admissions plan. Each applicant may compete for every available seat and duration of residence is no more than a plus factor.[12] As a consequence, it was not unreasonable for the defendants to believe that using duration of residence as a plus factor to gauge an applicant's propensity to practice in New Mexico was a constitutionally permissible means to increase the provision of medical care to underserved portions of the state.

**VI**

---

[12] Although the district court found a genuine issue of material fact as to whether duration of residence was the dispositive factor with respect to plaintiff's rejection , there is no dispute that defendants consider other factors in their admission decisions.

- 23 -

Because we find plaintiff lacks standing to seek an injunction prohibiting UNMSM from favoring long-term residents in future admissions decisions or a forward-looking declaration that such practice is unconstitutional, the injunction entered by the district court in its May 30 order is **VACATED**. Moreover, because we conclude the institutional defendants are immune from suit under the Eleventh Amendment, the district court's judgment is **REVERSED** to the extent that it permits plaintiff to proceed with any action against UNMSM, its Board of Regents, or its Committee on Admissions. We **AFFIRM** the district court to the extent that it permits plaintiff to seek injunctive relief under the <u>Ex Parte Young</u> exception against Klepper and Atencio in their official capacities that would place her in the immediate entering class at UNMSM. However, we **REVERSE** the district court's decision to the extent that it permits plaintiff to seek a declaration that the disputed policy violated her rights in the past. Finally, we **REVERSE** the district court's denial of Klepper and Atencio's motion for summary judgment on the grounds of qualified immunity because we conclude that the law was not clearly established. This action is **REMANDED** to the district court for further proceedings consistent with this opinion.