FILED
United States Court of Appeals
Tenth Circuit

December 6, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GENERAL CHARLES E. "CHUCK"
YEAGER, (retired), an individual,

     Plaintiff - Appellant,

v.

FORT KNOX SECURITY PRODUCTS, a
Utah corporation,

     Defendant - Appellee.

No. 15-4192
(D.C. No. 2:11-CV-00091-TS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

What's in a name? For General Chuck Yeager and Fort Knox Security

Products, the answer is still unclear despite years of litigation. In this case, we must

decide whether Yeager has standing to continue litigating his claim that Fort Knox

used his name and image without permission. The answer depends on whether

Yeager assigned the rights to his name and image to PMN II, LLC,[1] and if so, which

rights he assigned. Initially, Yeager claimed he had assigned certain pertinent rights

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] "PMN" stands for "Protect My Name." Yeager and his wife created this
company at least in part to prevent the unauthorized use of Yeager's name and image.

to PMN II, and Fort Knox argued that the assignment was invalid. But in this second appeal, the parties have switched positions. The district court concluded that Yeager lacked standing because he had transferred all relevant rights to PMN II and was unable to articulate which rights, if any, he retained. Accordingly, the court granted Fort Knox summary judgment. We affirm.

## BACKGROUND

Fort Knox had been using Yeager's name and likeness in various advertisements and promotional materials since 1986, when Yeager and Charles James, Fort Knox's founder, struck up an informal oral agreement allowing this use. Fort Knox agreed to stop using Yeager's name and likeness several years ago, but still used each at least once afterwards. In 2011, PMN II and Yeager ("the plaintiffs") filed suit alleging that Fort Knox had used Yeager's name and likeness in its promotional materials and advertisements without permission. In their complaint, the plaintiffs stated that "General Yeager has assigned and/or is assigning some or all of his rights, title and interest in his name, image and trademarks to PMN [II]." Appellant's App. vol. 1 at 20. Fort Knox filed two summary-judgment motions.

Only one of these motions is relevant to this appeal.[2] In it, Fort Knox moved to dismiss PMN II for lack of standing. It argued that Yeager never assigned any of his rights to PMN II, so the company had no cognizable interest in the rights at issue. The district court denied this motion, finding that factual disputes remained over

---

[2] In Fort Knox's other summary-judgment motion, it argued that the plaintiffs' claims were barred by laches and the statute of limitations.

2

Yeager's assignment of rights to PMN II. It nevertheless dismissed the plaintiffs' claims, finding them barred by the doctrine of laches per Fort Knox's other summary-judgment motion.

The plaintiffs appealed to this court, but PMN II's counsel withdrew while the appeal was pending. We therefore dismissed PMN II's appeal for failure to prosecute, and Yeager continued pro se. We later affirmed the district court's order dismissing Yeager's claims except for two claims arising within the four-year limitations period. *Yeager v. Fort Knox Sec. Prods.*, 602 F. App'x 423, 432 (10th Cir. 2015). We remanded for the district court to address the two surviving claims. On remand, Fort Knox filed two more summary-judgment motions. The first motion renewed Fort Knox's arguments on laches and the statute of limitations. The second motion asserted that it was now General Yeager who lacked standing. It claimed that "[e]vidence and statements introduced by [Yeager] . . . demonstrate he conferred a valid, clear assignment in both his name and image to PMN II." Appellant's App. vol. 5 at 725. Thus, Fort Knox argued, Yeager retained no proprietary rights in his name or likeness.

Yeager opposed the motions. In opposing the standing motion, Yeager first presented evidence that PMN II had reassigned his rights in his name and likeness back to him, effective May 1, 2014—which was before we dismissed PMN II. He later abandoned this argument and instead "conced[ed] that no valid assignment from General Yeager to PMN II occurred," thus adopting Fort Knox's original position. *Id.* at 873. In ruling on the summary-judgment motions, the district court noted that it

3

had "previously ruled that PMN II had an interest in Yeager's proprietary rights." *Id.* at 883. It stated that before Yeager filed his surreply, the parties agreed that "Yeager had assigned all interests and rights in his image as it relates to safes, safe products, and/or filing cabinets to PMN II, and had conferred certain right, title, and interest to his name to PMN II with respect to safes." *Id.* The court therefore granted Fort Knox's summary-judgment motion based on standing grounds and denied its motion based on laches and the statute of limitations as moot. Yeager filed a motion to alter or amend the judgment, which the court denied.

This appeal followed.

## DISCUSSION

### I. Standard of Review

We review de novo a district court's grant of summary judgment, "using the same standard applied by the district court pursuant to Fed. R. Civ. P. 56(a)." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Applying this standard, "[w]e must 'view facts in the light most favorable to' [Yeager] . . . resolving all factual disputes and reasonable inferences in [his] favor." *Id.* (quoting *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013)). We must grant summary judgment if "there is no genuine dispute as to any material fact" and Fort Knox is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could [affect] the outcome of the lawsuit." *Cillo*, 739 F.3d at 461 (alteration in original) (quoting *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000)). "A factual dispute is 'genuine if a rational jury could

4

find in favor of the nonmoving party on the evidence presented.'" *Id.* (quoting

*Horizon/CMS Healthcare Corp.*, 220 F.3d at 1190).

If Fort Knox satisfies its burden of showing that the case presents no genuine

issue of material fact, the burden shifts to Yeager to "make a showing sufficient to

establish the existence of an element essential to [his] case in order to survive

summary judgment." *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)

(alteration in original) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.

2000)). To meet this burden, Yeager must "go beyond the pleadings and 'set forth

specific facts' that would be admissible in evidence . . . from which a rational trier of

fact could find for [him]." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th

Cir. 1998) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). These

specific facts must exist in "particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations,

stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ.

P. 56(c)(1)(A).

## II.    Standing

As a threshold matter, Yeager argues that Fort Knox's standing argument is

actually a real-party-in-interest argument under Fed R. Civ. P. 17(a).[3] He claims that

---

[3] Yeager also argues that by declining to resolve whether the doctrine of laches barred Yeager's two surviving challenges to Fort Knox's use of his name and likeness, the district court violated our mandate. This argument fails because in our order dismissing all but two of Yeager's claims, we remanded the case for "further proceedings consistent with the analysis herein." *Yeager*, 602 F. App'x at 432. And

5

Fort Knox waived this argument by failing to raise it immediately after PMN II was dismissed, since the grounds for this legal challenge existed at that point. We disagree.

First, standing is jurisdictional, and can be raised at any point in the proceedings. *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 492 (10th Cir. 1998). And if a party lacks standing to bring a particular legal challenge, courts lack jurisdiction to resolve the claim's merits. *See id.* at 493. Therefore, Fort Knox properly raised this argument during Yeager's second appeal. Second, we reject Yeager's contention that applying a real-party-in-interest analysis would have changed the district court's ruling. In this case, the analyses are identical. "[W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue . . . ." *Flast v. Cohen*, 392 U.S. 83, 99–100 (1968).

Although a party can waive a real-party-in-interest defense, *see Fed. Deposit Ins. Corp. v. Bachman*, 894 F.2d 1233, 1236 (10th Cir. 1990), Yeager's claim that Fort Knox waived its right to bring this defense succeeds only if he never assigned his rights to PMN II. If he did not assign the rights, PMN II would never have been a

on remand, "unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard." *Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014) (quoting *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011)). Because we did not prohibit the district court from addressing standing, and because standing is jurisdictional and cannot be waived, the district court properly exercised its discretion in dismissing Yeager's claims for lack of standing.

6

real party in interest, and its dismissal would not have affected Yeager's rights. But if he did assign those rights, *neither* party would have the right to bring suit: claim preclusion would bar both PMN II and Yeager from continuing with this litigation because we dismissed PMN II and its claims in a final judgment on the merits in an earlier action. *See Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014).

We evaluate standing to sue by asking "[w]hether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy." *Sierra Club v. Morton*, 405 U.S. 727, 731–32 (1972). If Yeager had successfully assigned all relevant rights to his name and likeness to PMN II, he would have lost any stake in the matter at hand, and therefore would lose either on standing or on real-party-in-interest grounds. Unless Yeager can rebut Fort Knox's summary-judgment showing that he has not retained some rights entitling him to continue with this lawsuit, he lacks standing. Therefore, we now consider Yeager's arguments on this point.

### III.  Yeager's Remaining Rights

Yeager makes three arguments as to why he has standing to continue this litigation. First, he argues that the district court improperly concluded on remand that he assigned all of his rights to PMN II. As part of this argument, Yeager "concedes" Fort Knox's earlier position (which Yeager had earlier denied) that no assignment had ever occurred, meaning that PMN II's dismissal had no impact on Yeager's standing. Second, he claims that even if he assigned some of his rights to PMN II, he

7

didn't assign all of those rights, meaning he has standing to continue with this lawsuit. Third, Yeager argues that he presented evidence to the district court that PMN II reassigned his rights back to him—the reassignment conveniently backdated to before PMN II's dismissal—but he seems to have abandoned this argument on appeal.

Yeager first argues that he never assigned *any* of his rights to PMN II. According to Yeager, his oral assignment of rights was invalid because it wasn't clear and unequivocal. To support this argument, he cites the district court's order denying Fort Knox's summary-judgment motion based on PMN II's standing. Yeager claims that the district court declined to decide whether he transferred his proprietary rights to PMN II because doing so would have required the court to judge witness credibility and weigh evidence, actions that are prohibited on summary judgment. But in reality the court simply rejected Fort Knox's argument that the evidence supporting Yeager's assignment of rights was not credible. In fact, the district court actually found that Yeager had assigned at least some of his rights to PMN II. The evidence supporting this finding is still before us on appeal, and Yeager has presented no new evidence to counter it.

Yeager attempts to avoid this issue by "conceding" that his assignment of rights to PMN II was invalid, as Fort Knox originally argued. He relies on Fort Knox's statements in its first summary-judgment motion, in which Fort Knox adopted the position that PMN II lacked standing. Yeager argues that the district court improperly rejected his concession because, as the party who advanced the

8

claim that he validly assigned his rights to PMN II, he "was entitled to withdraw" it. Appellant's Opening Br. at 13, 15. Yeager seems to believe that if he withdraws this claim, we must automatically accept Fort Knox's original counterclaims and conclude that no assignment of rights occurred.

But the parties having switched positions doesn't change the underlying evidence in the record. And Yeager's concession—what he describes as his decision to stop defending his previous statements—doesn't change the legal effect of those statements. Yeager cannot erase his previously-submitted contradictory testimony by changing his mind and agreeing with Fort Knox's earlier position. As Yeager himself admitted, the district court found in its first order that he had presented enough evidence in support of his assignment of rights to survive summary judgment. This has not changed on appeal.

Alternatively—perhaps recognizing that his own evidence weighs against him—Yeager argues that he didn't assign *all* of his rights to PMN II. According to Yeager, "[a]ny oral assignment of rights to PMN II was never intended to encompass all of General Yeager's rights with respect to his name and likeness." *Id.* at 18. Though there is some evidence that Yeager didn't intend to assign all of his rights to PMN II, he fails to identify which rights he retained.

PMN II responded to Fort Knox's first set of interrogatories by stating that "on or around January 13, 2011, General Yeager acted to confer certain right, title and interest in his name to PMN II, LLC, with limited regard to Fort Knox's use of General Yeager's name or likeness in connection with the promotion or marketing of

9

its safes." Appellant's App. vol. 1 at 126. Later, Yeager's wife—the managing member of PMN II—affirmed under penalty of perjury that Yeager "verbally assigned and transferred to PMN all interests and rights in his image as it related to safes, safe products, and/or filing cabinets." Appellant's App. vol. 5 at 878.[4]

To counter this evidence, Yeager now merely states that the assignment "was limited and only conferred 'certain' rights, with 'limited' regard to the promotion or marketing of safes. There is no evidence that General Yeager transferred all rights to PMN II, Inc." *Id.* at 835. Yeager adds no detail to support this claim, but rather, simply repeats that he "always retained some of the rights relating to his name and likeness." *Id.* at 837. To prevent summary judgment, he must go beyond this bare assertion and cite actual evidence in the record supporting this statement. *Adler*, 144 F.3d at 671. He fails to do so here, and never identifies the rights he claims to retain.

In fact, when Fort Knox's counsel asked Yeager during his deposition what rights he retained, Yeager repeatedly acknowledged not knowing, instead saying that his wife Victoria generally handled those details. He testified that he lacked personal knowledge of whether he assigned his rights to his name and likeness to PMN II. The only new evidence Yeager provides on appeal is his concession that no assignment to PMN II ever occurred. As discussed above, however, this "concession" contradicts

---

[4] Yeager's wife previously answered one of Fort Knox's interrogatories by stating that Yeager had not assigned his rights in his name, image, and trademark to PMN II. She later explained that she had only answered the interrogatory in this manner because Yeager had assigned his rights to PMN II "solely as they pertained to his image as it related to safes, safe products, and/or filing cabinets." Appellant's App. vol. 1 at 85.

specific evidence in the record. Therefore, Yeager has shown no *genuine* dispute as to any material fact.

Yeager cites *Spin Master, LTD v. Zobmondo Entertainment, LLC*, Nos. CV 06–3459 ABC (PLAx), CV 07–0571 ABC (PLAx), 2011 WL 3714772 (C.D. Cal. Aug. 22, 2011), to support his argument that he retains sufficient rights to continue with this litigation. He argues that under *Spin Master*, a party has standing to continue in a lawsuit so long as that party retains some "cognizable interest[]" in the rights at issue. Appellant's Opening Br. at 18 & n.58. Yeager misinterprets this case. In *Spin Master*, the plaintiffs retained a license to use and exploit the trademark at issue, even though they assigned legal title to the trademark to a different party. *Spin Master*, 2011 WL 3714772, at *2, *6. A written agreement memorialized this license. *Id.* at *4. Therefore, the plaintiffs' interests were clearly defined, and their right to remain in the trademark lawsuit derived from these clearly defined interests. Here, because no written agreement defined Yeager's interests and Yeager offers no particularized description of the rights he retains, he can't survive summary judgment.

Similarly, Yeager can't avoid summary judgment by relying on PMN II's purported reassignment of rights back to him. Perhaps realizing this, he has abandoned this argument on appeal.[5] Still, we reaffirm the district court's conclusion

---

[5] In his brief, Yeager attempts to discount PMN II's purported reassignment of rights by stating that it was "irrelevant" because the initial assignment was invalid.

11

here: PMN II's dismissal for failure to prosecute operated as a final judgment on the merits, *see Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995), and claim preclusion therefore prohibits PMN II from relitigating these issues, *see Campbell*, 777 F.3d at 1077. Because "the common law puts the assignee in the assignor's shoes, whatever the shoe size," PMN II's reassignment doesn't benefit Yeager. *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005).

In sum, by supposedly reassigning Yeager's rights back to him with an effective date that precedes the claims' dismissal, PMN II can't revive claims that we dismissed on the merits. The district court properly concluded that "[j]ust as PMN II could not attempt to reassert those dismissed claims, Yeager cannot assert those claims possessed by PMN II at the time of PMN II's dismissal." Appellant's App. vol. 5 at 884.

## CONCLUSION

For the reasons above, we affirm the district court's order granting Fort Knox's summary-judgment motion based on standing.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

Appellant's Opening Br. at 15. But as discussed above, the record suggests otherwise.