**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 17, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

KRISTEN DAY; SONNA L. DAY;
CODY ECHOLS; DAVID C.
EICHMAN; BRANDI P. GILLETTE;
CHRISTOPHER J. HEATH; AMY E.
HUGHES; JERALDYN L. HUGHES;
KENNETH H. HUGHES; NICOLE C.
KEENE; HEIDI L. LANDHERR;
ROBERTA K. MACGREGOR;
ROBERT R. MANZEL; KARLA A.
MANZEL; KAYLA L. MANZEL;
JONATHAN D. MILLER; MARY L.
MILLER; LASHONDA M.
MONTGOMERY; MICHELLE
PRAHL; KYLE ROHDE; MARCY R.
RUTAN; JOSHUA B. SHEADE;
JAMIE WHITTENBERG; LINDSEY
D. WHITTINGTON,

      Plaintiffs-Appellants,

v.

RICHARD BOND, Chairman of the
Kansas Board of Regents; DONNA L.
SHANK; JANICE DEBAUGE;
WILLIAM R. DOCKING; LEWIS L.
FERGUSON; FRANK GAINES;
NELSON GALLE; JAMES GRIER,
III; DERYL W. WYNN, Members of
the Kansas Board of Regents in their
official capacity; CINDY DERRITT,
Registrar of the University of Kansas
in her official capacity; MONTY
NIELSON, Registrar of Kansas State

No. 05-3309

University in his official capacity;
LEHYMANN F. ROBINSON,
Registrar of Emporia State University
in his official capacity,

       Defendants-Appellees,

KANSAS LEAGUE OF UNITED
LATIN AMERICAN CITIZENS; THE
HISPANIC AMERICAN
LEADERSHIP ORGANIZATION,
Kansas State Chapter; A. DOE; J.
DOE; L. DOE,

       Defendants-Intervenors-
       Appellees,

KATHLEEN SEBELIUS, personally
and in her official capacity as
Governor of Kansas,

       Defendant.

_____

HONORABLE ALAN K. SIMPSON;
HONORABLE LAMAR S. SMITH;
WASHINGTON LEGAL
FOUNDATION; THOMAS J.
BRENNAN; ZAN BRENNAN;
BRIGETTE BRENNAN; ALLIED
EDUCATIONAL FOUNDATION;
KANSAS ASSOCIATION OF
SCHOOL BOARD, INC.,

       Amici Curiae.

---

## ORDER

---

Before **LUCERO**, Circuit Judge, and **MCWILLIAMS** and **EBEL**, Senior Circuit Judges.

---

**EBEL**, Senior Circuit Judge.

---

Plaintiffs-Appellants filed a petition for rehearing and for consideration en banc seeking review of our decision affirming the dismissal of their preemption and equal protection claims.[1] In the district court, Plaintiffs challenged a Kansas statute—Kan. Stat. Ann. § 76-731a—that allows certain non-U.S. citizens to pay in-state tuition rates while attending Kansas post-secondary educational institutions. The district court dismissed each of the relevant claims for lack of standing.

On appeal, we affirmed the district court's dismissal of Plaintiffs' equal protection claim for lack of standing. Day v. Bond, 500 F.3d 1127, 1130 (10th Cir. 2007). We then addressed Plaintiffs' preemption claim, and noted that "[t]he only form of injury that the Plaintiffs assert in support of their standing to make this preemption claim is the invasion of a putative statutory right conferred on them by [8 U.S.C.] § 1623." Id. at 1136. Accordingly, to determine if Plaintiffs

---

[1] See Day v. Bond, 500 F.3d 1127 (10th Cir. 2007), for a full discussion of the facts in this case.

-3-

had alleged the requisite injury in fact necessary for standing purposes, we analyzed whether § 1623 confers a private right of action. Id. We affirmed the district court's dismissal of the preemption claim after concluding that Plaintiffs lacked standing because § 1623 did not confer a private right of action. Id. at 1139.

After reviewing Plaintiffs' petition, we conclude that Plaintiffs' arguments do not justify rehearing because our decision does not conflict with prior decisions of the Supreme Court, the Tenth Circuit, or our sister circuits.[2] We recognize, however, that certain facets of this case are complex and that additional explanation may clarify the logic supporting our conclusions. Accordingly, we address below why it is appropriate to deny Plaintiffs' request for rehearing in spite of two of the issues raised in the petition.[3]

I.  **Whether our opinion concluded that preemption claims generally require a plaintiff to demonstrate a private right of action, and if so, whether our opinion conflicts with precedent from the Tenth Circuit, our sister circuits, and the Supreme Court**

First, Plaintiffs contend that our opinion concludes that a private right of action is a necessary prerequisite in all instances to establish federal question jurisdiction for preemption claims. They argue that this conclusion conflicts with

_____

[2]The petition was circulated to all members of the court who are in active service. No judge called for a poll. Accordingly, the request for rehearing en banc is denied.

[3]We find no merit in any of the other issues raised in the petition for rehearing and do not feel that further discussion of those matters is warranted.

-4-

prior decisions of the Supreme Court, the Tenth Circuit, and our sister circuits. Plaintiffs, however, apparently misunderstand the nature of our conclusion regarding the relationship between the alleged statutory right and their preemption claim. Their confusion on this point apparently stems from the unique nature of the injury they asserted in relation to their preemption claim. As we recognized in the opinion, Plaintiffs' only form of alleged injury for their preemption claim was "the invasion of a putative statutory right conferred on them by [8 U.S.C.] § 1623." Id. at 1136. Therefore, if § 1623 did not confer such a right on Plaintiffs, they would lack standing for their preemption claim. Our standing analysis thus required us to analyze whether § 1623 confers a private right of action. Id. This is a distinct question from whether a private right of action exists for the purposes of federal question jurisdiction.

In support of their contention, Plaintiffs assert that our opinion conflicts with this court's decision in Qwest Corp. v. City of Santa Fe, 380 F.3d 1258 (10th Cir. 2004), because our standing analysis required Plaintiffs to demonstrate that § 1623 confers a private right of action. Plaintiffs make much of the language in Qwest that states "[a] party may bring a claim under the Supremacy Clause that a local enactment is preempted even if the federal law at issue does not create a private right of action." 380 F.3d at 1266. Our conclusion, however, does not conflict with Qwest because there this court did not determine that a plaintiff may bring a preemption claim without standing. In fact, the plaintiff in Qwest clearly

alleged a sufficiently particularized economic injury based on a newly enacted

Santa Fe ordinance.[4]  Id. at 1262-63.  Accordingly, given the clear presence of a

particularized injury, this court did not explicitly address that element of the

standing inquiry.

Plaintiffs also assert that our opinion is at odds with cases from several

other circuits: Puerto Rico Telephone Co. v. Municipality of Guayanilla, 450 F.3d

9 (1st Cir. 2006); Planned Parenthood of Houston and Southeast Texas v.

Sanchez, 403 F.3d 324 (5th Cir. 2005); Bud Antle, Inc. v. Barbosa, 45 F.3d 1261

(9th Cir. 1994); and Western Air Lines, Inc. v. Port Authority of New York &

New Jersey, 817 F.2d 222 (2d Cir. 1987).  We disagree because each of these

cases can be distinguished in the same manner as Qwest.  Specifically, in each

case, the plaintiffs had a sufficiently particularized injury to support standing for

their claim.  Puerto Rico Tel. Co., 450 F.3d at 11, 16 (plaintiff alleged injury

based on a potentially preempted local ordinance that required the plaintiff to pay

5% of its gross revenues to a municipality); Sanchez, 403 F.3d at 328 (plaintiff

alleged injury based on a potentially preempted state statute that restricted the

distribution of federal family planning funds to entities—like the plaintiff—that

provided abortions); Bud Antle, Inc., 45 F.3d at 1264–65 (plaintiff alleged injury

_____

[4] Specifically, in Qwest, the plaintiff alleged that the ordinance would result in a 59% increase in its operating costs in Santa Fe.  See 380 F.3d at 1262-63.

-6-

based on costs of complying with potentially preempted state labor law); W. Air Lines, Inc., 817 F.2d at 223 (plaintiff alleged injury based on a potentially preempted state agency rule that prevented the plaintiff from establishing a route between LaGuardia and Salt Lake City airports). Accordingly, in each of the cases cited by Plaintiffs, the court did not have reason to explicitly address the standing issue because the Plaintiffs alleged a particularized injury, and instead only determined that a private right of action under a federal statute that allegedly preempted the offending statute was not a prerequisite to bring a preemption claim. Puerto Rico Tel. Co., 450 F.3d at 14-15; Sanchez, 403 F.3d at 334; Bud Antle, Inc., 45 F.3d at 1269; W. Air Lines, Inc., 817 F.2d at 225–26. Therefore, the distinction between these cases and the instant case is clear: only in the instant case are we required to consider the effect of a lack of a private right of action in the context of standing.

Plaintiffs also complain that our decision conflicts with Supreme Court precedent. In particular, Plaintiffs argue that our opinion is inconsistent with Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983), and Crosby v. National Foreign Trade Council, 530 U.S. 363 (2000). In Shaw, the Supreme Court asserted that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." 463 U.S. at

96 n.14. Similarly, in Crosby, the Supreme Court permitted a plaintiff to pursue a preemption claim under the Supremacy Clause even though it was not clear that the federal law at issue gave rise to a private right of action. 530 U.S. at 370-71.

These cases support the general proposition that a federal law need not include a private right of action in order to support federal question jurisdiction when a party pursues a preemption claim arising under the Supremacy Clause. Shaw and Crosby do not, however, support the proposition that a party does not need to establish that it has standing before it may pursue such a claim. Thus, these cases do not conflict with our opinion.

## II.     Whether our decision requiring a private right of action to establish Plaintiffs' standing for their preemption claim conflicts with Tenth Circuit precedent

Additionally, Plaintiffs contend that our decision requiring a private right of action to establish standing for their preemption claim conflicts with a prior Tenth Circuit decision. Specifically, Plaintiffs argue that by requiring them to demonstrate that § 1623 confers a private right of action, our standing analysis for their preemption claim conflicts with In re Special Grand Jury 89-2, 450 F.3d 1159 (10th Cir. 2006). In Grand Jury, we decided two issues relevant to the standing inquiry in the instant case. First, we noted that an injury in fact only requires an injury to be "the sort of interest that courts think to be of sufficient moment to justify judicial intervention." Id. at 1172. Second, we noted that "there is no requirement that the legal basis for the interest of a plaintiff that is

-8-

'injured in fact' be the same as, or even related to, the legal basis for the plaintiff's claim." Id. at 1173.

Neither of these determinations alter the logic of our opinion in the instant case. As previously stated, Plaintiffs' only claimed injury in regard to their preemption claim rests on the invasion of a statutory right that Plaintiffs claimed § 1623 conferred on them.[5] Accordingly, Grand Jury's statement that a "judicially cognizable interest" can exist even if the interest is not "protected by law" has no effect because Plaintiffs' only claimed injury relies explicitly and entirely on their asserted rights under statutory law. Accordingly, in such circumstances, our decision does not conflict with Grand Jury.

## III. Conclusion

In sum, the cases that Plaintiffs believe conflict with our opinion do no such thing. In each of these cases, it is clear that a sufficiently particularized injury existed in order to support standing. Here however, Plaintiffs have not asserted the existence of any such particularized injury. Although Plaintiffs may generally bring a preemption claim without an implied private right of action, in this particular instance, they do not have standing to do so because they have

---

[5]Plaintiffs do attempt to assert other injuries in conjunction with their equal protection claims. Our previous opinion addressed those assertions and concluded that they were insufficient to establish standing. Those alleged injuries were not asserted as a basis for their preemption claim. However, if they had been, they would be subject to the same defects and insufficiencies pointed out in our prior discussion regarding the Plaintiffs' equal protection claim.

asserted no separate injury.  Accordingly, we DENY the petition for rehearing with suggestion for rehearing en banc.

Entered for the Court

ELISABETH A. SHUMAKER
Clerk of Court

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KRISTEN DAY; SONNA L. DAY;
CODY ECHOLS; DAVID C.
EICHMAN; BRANDI P. GILLETTE;
CHRISTOPHER J. HEATH; AMY E.
HUGHES; JERALDYN L. HUGHES;
KENNETH H. HUGHES; NICOLE C.
KEENE; HEIDI L. LANDHERR;
ROBERTA K. MACGREGOR;
ROBERT R. MANZEL; KARLA A.
MANZEL; KAYLA L. MANZEL;
JONATHAN D. MILLER; MARY L.
MILLER; LASHONDA M.
MONTGOMERY; MICHELLE
PRAHL; KYLE ROHDE; MARCY R.
RUTAN; JOSHUA B. SHEADE;
JAMIE WHITTENBERG; LINDSEY
D. WHITTINGTON,

      Plaintiffs-Appellants,

v.

RICHARD BOND, Chairman of the
Kansas Board of Regents; DONNA L.
SHANK; JANICE DEBAUGE;
WILLIAM R. DOCKING; LEWIS L.
FERGUSON; FRANK GAINES;
NELSON GALLE; JAMES GRIER,
III; DERYL W. WYNN, Members of
the Kansas Board of Regents in their
official capacities; CINDY DERRITT,
Registrar of the University of Kansas
in her official capacity; MONTY
NIELSON, Registrar of Kansas State
University in his official capacity;

No. 05-3309

LEHYMANN F. ROBINSON,
Registrar of Emporia State University
in his official capacity,

      Defendants-Appellees,

KANSAS LEAGUE OF UNITED
LATIN AMERICAN CITIZENS; THE
HISPANIC AMERICAN
LEADERSHIP ORGANIZATION,
Kansas State Chapter; A. DOE; J.
DOE; L. DOE,

      Defendants-Intervenors-
      Appellees,

KATHLEEN SEBELIUS, personally
and in her official capacity as
Governor of Kansas,

      Defendant.

---

HONORABLE ALAN K. SIMPSON;
HONORABLE LAMAR S. SMITH;
WASHINGTON LEGAL
FOUNDATION; THOMAS J.
BRENNAN; ZAN BRENNAN;
BRIGETTE BRENNAN; ALLIED
EDUCATIONAL FOUNDATION;
KANSAS ASSOCIATION OF
SCHOOL BOARD, INC.,

      Amici Curiae.

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 04-CV-4085-RDR)**

Kris W. Kobach, University of Missouri-Kansas City School of Law, Kansas City, Missouri (Michael M. Hethmon, Federation for American Immigration Reform, Washington, District of Columbia, with him on the briefs), for Plaintiffs-Appellants.

David Davies, Deputy Attorney General; William Scott Hesse, Assistant Attorney General, State of Kansas, Topeka, Kansas; Michael F. Delaney (Clayton L. Barker and Michael C. Leitch, with him on the briefs), Spencer, Fane, Britt & Browne, Kansas City, Missouri, for Defendants-Appellees.

J. Eugene Balloun, Shook, Hardy & Bacon L.L.P., Overland Park, Kansas; Lee Gelernt and Lucas Guttentag, American Civil Liberties Union Foundation, New York, New York; Linton Joaquin and Tanya Broder, National Immigration Law Center, Los Angeles, California; Peter D. Roos, Multicultural Education, Training and Advocacy, Inc., Oakland, California, for Defendants-Intervenors-Appellees.

William Perry Pendley and Ronald Walter Opsahl, Mountain States Legal Foundation, Lakewood, Colorado, filed an amicus curiae brief in support of Plaintiffs-Appellants on behalf of Amici Curiae the Honorable Alan K. Simpson and the Honorable Lamar S. Smith.

Daniel J. Popeo and Richard A. Samp, Washington Legal Foundation, Washington, District of Columbia, filed an amicus curiae brief in support of Plaintiffs-Appellants on behalf of Amici Curiae Washington Legal Foundation, Thomas J. Brennan, Zan Brennan, Brigette Brennan, and Allied Educational Foundation.

David C. Cunningham, Topeka, Kansas, filed an amicus curiae brief in support of Defendants-Intervenors-Appellees on behalf of Amicus Curiae Kansas Association of School Board, Inc.

Before **LUCERO**, Circuit Judge, and **McWILLIAMS** and **EBEL**, Senior Circuit Judges.

**EBEL**, Senior Circuit Judge.

Kristen Day, a group of her fellow students at state universities in Kansas, and several of their parents (collectively, the "Plaintiffs") seek to overturn a provision of Kansas law that permits certain illegal aliens to qualify for in-state tuition rates. Day and the other Plaintiffs contend that Kansas Statutes § 76-731a unlawfully discriminates against U.S. citizens who are not Kansas residents in violation of the Equal Protection Clause of the Fourteenth Amendment and is preempted by 8 U.S.C. § 1623, a provision of federal immigration law. The district court below held that the Plaintiffs lacked standing to bring some of their claims and had no cause of action to bring others. Accordingly, it granted summary judgment against them. The Plaintiffs now appeal. We conclude that the Plaintiffs lack standing to bring their equal protection claim and that they lack a cause of action for their remaining statutory preemption claim; thus, we AFFIRM.

## BACKGROUND

On May 20, 2004, Kansas Governor Kathleen Sebelius signed into law Kansas House Bill 2145, effective July 1, 2004. H.B. 2145, now codified at K.S.A. § 76-731a, provided that certain nonresidents were deemed residents for tuition purposes.[1] Pursuant to its terms, at least six Kansas students who were

_____

[1] Section 76-731a, captioned "Certain persons without lawful immigration status deemed residents for purpose of tuition and fees," provides, in relevant part:

(continued...)

(a) Any individual who is enrolled or has been accepted for admission at a postsecondary educational institution as a postsecondary student shall be deemed to be a resident of Kansas for the purpose of tuition and fees for attendance at such postsecondary educational institution.

(b) As used in this section: . . .

(2) 'individual' means a person who

(A) has attended an accredited Kansas high school for three or more years,

(B) has either graduated from an accredited Kansas high school or has earned a general educational development (GED) certificate issued within Kansas, regardless of whether the person is or is not a citizen of the United States of America; and

(C) in the case of a person without lawful immigration status, has filed with the postsecondary educational institution an affidavit stating that the person or the person's parents have filed an application to legalize such person's immigration status, or such person will file such an application as soon as such person is eligible to do so or, in the case of a person with a legal, nonpermanent immigration status, has filed with the postsecondary educational institution an affidavit stating that such person has filed an application to begin the process for citizenship of the United States or will file such application as soon as such person is eligible to do so.

(c) The provisions of this section shall not apply to any individual who:

(1) Has a valid student visa; or

(2) at the time of enrollment, is eligible to enroll in a public postsecondary educational institution located in another state

(continued...)

undocumented, illegal aliens and who did not otherwise qualify for Kansas

resident tuition, paid resident tuition to attend the University of Kansas ("KU"),

Kansas State University ("KSU"), and Emporia State University ("ESU") in the

2004-05 school year.

The student Plaintiffs, who similarly were not legal residents of Kansas and

did not qualify for resident tuition under § 76-731a or any other Kansas statute,

filed suit to prevent implementation of § 76-731a. In a seven-count complaint,

they alleged that § 76-731a violates various provisions of federal immigration law

and the comprehensive regulatory scheme governing immigration; that it is

preempted by Congress's occupation of the immigration field; that it

impermissibly infringes upon powers reserved to the federal government; and that

it violates the Equal Protection Clause by discriminating in favor of illegal aliens,

as against nonresident U.S. citizens, in the provision of educational benefits. Of

relevance for purposes of the issues appealed are Counts 2 and 7 of the Plaintiffs'

Amended Complaint. Count 2 asserted that "implementation of [§ 76-731a] by

Kansas postsecondary educational institutions under the direction of the

Defendants violates . . . 8 U.S.C. § 1623."[2] Count 7 alleged that implementation

---

[1](...continued)
> upon payment of fees and tuition required of residents of such
> state.

[2]Section 1623, captioned "Limitation on eligibility for preferential
(continued...)

of § 76-731a would violate the Plaintiffs' equal protection rights "by denying [the] Plaintiffs eligibility to apply for and receive similar postsecondary educational benefits on an equal basis." The Defendants to the suit included Governor Sebelius,[3] the members of the Board of Regents, and the registrars of KU, KSU, and ESU (collectively, the "Defendants"). In addition, the Hispanic American Leadership Organization, Kansas State Chapter, and the Kansas League of United Latin American Citizens (the "Intervenors") were allowed to intervene as defendants.

The district court dismissed all of the Plaintiffs' claims on motions by the Defendants and Intervenors, which the court converted to motions for summary judgment. The court held the Plaintiffs lacked standing to bring their several claims that § 76-731a was preempted by provisions of federal law, including 8 U.S.C. § 1623. To the extent that the Plaintiffs sought to enforce substantive

---

[2](...continued)
treatment of aliens not lawfully present on basis of residence for higher education benefits," provides in relevant part that

> [n]otwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

[3]The district court dismissed Governor Sebelius as a defendant because she had no involvement with the enforcement of § 76-731a and thus was not a proper defendant in the suit. The Plaintiffs do not appeal this ruling.

-7-

rights conferred by 8 U.S.C. § 1623, the district court found they had standing but dismissed this claim for lack of a private right of action to enforce the statute's terms.  The court then dismissed the Plaintiffs' equal protection claim for lack of standing.  This appeal timely followed.

**DISCUSSION**

We review de novo a district court's order granting summary judgment, applying the same standard employed by the district court.  Alexander v. Oklahoma, 382 F.3d 1206, 1215 (10th Cir. 2004).  Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999).

We likewise review de novo "questions of subject matter jurisdiction, including whether a plaintiff has standing to sue."  Schutz v. Thorne, 415 F.3d 1128, 1132 (10th Cir. 2005), cert. denied, 546 U.S. 1174 (2006) (quoting Wilson v. Glenwood Intermountain Props., 98 F.3d 590, 593 (10th Cir. 1996)).  To prevail at summary judgment on standing grounds, the defendant must show that

the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing. See Essence, Inc. v. City of Fed. Heights, 285 F.3d 1272, 1280 (10th Cir. 2002) (requiring that a party prevailing at summary judgment on standing grounds "establish that there exists no genuine issue of material fact as to justiciability"); see also Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 329 (1999). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

The elements of the Article III standing inquiry are well-known. A plaintiff invoking the jurisdiction of a federal court bears the burden of showing:

> (1) injury in fact, by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative.

Ne. Fla. Chapter of Assoc. Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 663 (1993) (quotations, citations, and punctuation omitted). "[E]ach [of these] element[s] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). "In response to a summary judgment

motion," the plaintiff cannot "rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" regarding the elements of standing. Id. (quoting FED. R. CIV. P. 56(e)).

## I. Equal Protection Claim (Count 7)

The Plaintiffs make four arguments that the operation of § 76-731a violates their rights under the Equal Protection Clause of the Fourteenth Amendment and thereby created sufficient injury to support constitutional standing. In their Amended Complaint, their primary contended injury was the fiscal differential between nonresident tuition rates that the Plaintiffs paid and the resident tuition rate paid by the illegal aliens qualifying under § 76-731a. More specifically on appeal, the Plaintiffs articulate their injuries as follows:

> (1) The denial of equal treatment, in and of itself, caused by barriers in K.S.A. 76-731a making it impossible for nonresident U.S. citizens to obtain the benefits extended by the statute.
> (2) The increased tuition faced by [the Plaintiffs], as the burden of subsidizing illegal alien beneficiaries of K.S.A. 76-731a is passed along to other students through tuition hikes.
> (3) The injury that results from competition for scarce tuition resources.
> (4) The extra tuition paid by nonresident [Plaintiffs] during the 2004-2005 academic year over the in-state tuition paid by nonresident illegal aliens, as a consequence of the discriminatory operation of K.S.A. 76-731a.

Each of these four formulations of the Plaintiffs' claimed equal protection injuries fails to satisfy the requisite standing criteria. As to the second and third of these alleged injuries, the Plaintiffs have not demonstrated that they have suffered a concrete and nonspeculative injury based on the discriminatory

-10-

treatment provided by § 76-731a. As to the first and fourth of these alleged injuries, the Plaintiffs cannot show that their asserted injury was proximately caused by § 76-731a, nor that any injury could be redressed by a decision in their favor. We must, therefore, dismiss their equal protection claim for lack of standing.

## A. Injury

Injury in fact that supports standing to bring a claim under the Equal Protection Clause need not be economic in nature. Indeed, it is often the case that "the right asserted . . . is the right to receive 'benefits distributed according to classifications which do not without sufficient justification differentiate among covered applicants solely on the basis of [impermissible criteria],' and not a substantive right to any particular amount of benefits." Heckler v. Mathews, 465 U.S. 728, 737 (1984) (quoting Weinberger v. Wiesenfeld, 420 U.S. 636, 647 (1975)) (citation and alterations omitted); accord Cunico v. Pueblo Sch. Dist. No. 60, 917 F.2d 431, 441 (10th Cir. 1990). In such a case, injury in fact is simply "the existence of a government-erected 'barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group.'" Buchwald v. Univ. of N.M. Sch. of Med., 159 F.3d 487, 493 (10th Cir. 1998) (quoting City of Jacksonville, 508 U.S. at 666). A plaintiff need not show that he or she would necessarily have received the benefit but for the operation of the policy; rather, "the injury is the imposition of the barrier itself." Id.

-11-

However, the plaintiff still must show that the challenged discriminatory criterion was, in fact, the barrier that disadvantaged his or her ability to obtain benefits.[4] See id.

Neither the Plaintiffs' second nor third theories of injury under their equal protection claim is sufficiently concrete and nonspeculative to support standing. The second theory of injury, that the Plaintiffs shoulder the financial burden of increased tuition by subsidizing illegal aliens, requires a showing of a causal connection between the tuition subsidy for illegal aliens and nonresident tuition. Yet, other than the Plaintiffs' citations to news and opinion articles containing commonplace and nonspecific observations that nonresident tuition dollars often subsidize the cost of residents' education at public universities nationwide, the record before us is devoid of evidence of any causal relationship between the tuition cost imposed on Kansas' public universities by § 76-731a and nonresident tuition rates imposed on the Plaintiffs. Accordingly, the Plaintiffs have failed to carry their burden of demonstrating this claimed injury is "not conjectural or hypothetical." Lujan, 504 U.S. at 560 (quotation omitted).

---

[4]The Plaintiffs' first and fourth theories of injury under their equal protection claim, evaluated under these standards, sufficiently allege cognizable injuries in fact to support the Plaintiffs' standing. However, as addressed in Part I.B of this opinion, infra, those theories falter on the causation and redressability requirements of Article III standing.

-12-

Similarly, the third theory of injury — "competition for scarce tuition resources" on an unequal footing — requires some proof of the existence of competition between the Plaintiffs and illegal aliens over a limited pool of funds employed for tuition subsidies. However, our statement in Buchwald that "the injury is the imposition of the barrier itself" in cases of competition on an uneven field, 159 F.3d at 493, does not grant license to assert injury upon an allegation of competition that itself may be merely hypothetical, see Lujan, 504 U.S. at 560. Here, the Plaintiffs' failure to adduce any evidence in support of their theory of injury would force us into speculating on the inner workings of university and state budgetary mechanisms to discern a genuine issue of material fact over the existence vel non of this injury. The record is devoid of any evidence that Kansas public universities' budgets are a zero-sum game or that the higher nonresident tuition rates that illegal aliens would pay in the absence of § 76-731a would even be available for redistribution to tuition reductions or educational services benefitting nonresident students like the Plaintiffs. Thus, the Plaintiffs have provided no basis upon which we may conclude that this third claimed injury is anything other than speculation.

## B. Causation and Redressability

The Plaintiffs' first and fourth theories of injury under their equal protection claim are sufficiently concrete, particularized, and nonspeculative to support injury. They nevertheless founder on the Plaintiffs' inability to establish

-13-

either injuries caused by the allegedly unlawful discrimination the Plaintiffs decry or that any such injuries would be redressed by a favorable decision from this court. As we have consistently held, "[d]iscrimination cannot be the cause of injury to an applicant who could not have obtained the benefit even in the absence of the discrimination," and such an applicant lacks the requisite personal stake in the outcome because he would still not qualify for the benefit following a decision in his favor.[5] Wilson, 98 F.3d at 594; see Fuller v. Norton, 86 F.3d 1016, 1027 (10th Cir. 1996).

In Wilson, we addressed a Fair Housing Act challenge to, inter alia, several landlords' practice of segregating by gender housing reserved for students of Brigham Young University (BYU). 98 F.3d at 592. Because suit was brought by nonstudents, however, we held they lacked standing under City of Jacksonville. We determined that

> a person who fails to satisfy lawful, nondiscriminatory requirements or qualifications for the benefit lacks standing to raise claims of

---

[5]Contrary to the Plaintiffs' arguments, City of Jacksonville does not mandate a different conclusion. The Supreme Court held in that case that "a plaintiff challenging under the Equal Protection Clause a legal barrier to compete for a government contract, need not show that in the absence of the challenged provision he would have been awarded the contract, only that he would have qualified for the *opportunity* to bid for it." Fuller, 86 F.3d at 1027 n.10 (citing City of Jacksonville, 508 U.S. at 665-67). As we noted in Fuller, this "equal footing" definition of injury in the context of a competition for benefits does not contradict the principle that a plaintiff disqualified entirely from competing for a benefit by nondiscriminatory eligibility criteria lacks standing. Id. This principle is equally applicable to competitive and noncompetitive benefit programs.

-14-

discrimination in the denial of the benefit. The discrimination does not deprive the person of the ability to compete because he or she is disqualified from competing for other, legitimate reasons. A favorable decision on the discrimination claim could not redress the injury because the person would still be disqualified from competing.

Id. at 593.  The Wilson plaintiffs, who were nonstudents, could not show causation because "the ownership and/or operation of gender-segregated apartments reserved solely for BYU students could not have caused [the] plaintiffs to lose the opportunity to rent the apartments," and a decision in their favor would not redress their claimed injury "because they would still not be qualified to rent apartments reserved for BYU students."  Id. at 594.

While it is indisputable that standing to assert an equal protection claim does not require that a plaintiff show that he *would* have obtained the benefit but for the discriminatory effects of a government-erected barrier, the plaintiff must nevertheless demonstrate that he *could* have obtained the benefit.  See City of Jacksonville, 508 U.S. at 666.  If, as in Wilson, a plaintiff cannot do so because nondiscriminatory classifications would disqualify him from eligibility for the benefit even absent the challenged discriminatory classification, he cannot show injury caused by the discrimination, nor can he show injury that would be redressed by a decision in his favor; he therefore lacks standing to bring his claim.  98 F.3d at 593-94.  Similarly, in a case concerning the denial of an equal opportunity to compete, such as Schutz, City of Jacksonville, or Buchwald, the plaintiff must show he is not disqualified from competing because of

-15-

nondiscriminatory eligibility criteria and that the allegedly discriminatory eligibility criteria impaired his opportunity successfully to compete for the benefits offered.  See Schutz, 415 F.3d at 1133-34; Buchwald, 159 F.3d at 493.

None of these Plaintiffs would be eligible to pay resident tuition under § 76-731a even if the allegedly discriminatory test of § 76-731a(c)(2) favoring illegal aliens were stricken, because none attended Kansas high schools for at least three years and either graduated from a Kansas high school or received a Kansas GED certificate.  K.S.A. § 76-731a(b)(2)(B), (C).  This is a nondiscriminatory prerequisite for benefits under § 76-731a, regardless of the citizenship of the students.  The Plaintiffs' first and fourth theories of injury, under which they seek equal treatment with illegal aliens under § 76-731a, were therefore not caused by the statute's allegedly discriminatory operation, nor would these injuries be redressed by a decision striking down the discriminatory classification embedded in its provisions.  See Wilson, 98 F.3d at 593-94.  The Plaintiffs thus do not have standing to challenge § 76-731a on equal protection grounds, and we affirm the dismissal of their claim on that basis.

## II.  Preemption Claim (Count 2)

In addition to arguing that K.S.A. § 76-731a violates the Equal Protection Clause by discriminating on the basis of alienage, the Plaintiffs contend that § 76-

731a is preempted by 8 U.S.C. § 1623.[6]  The district court likewise dismissed this claim for lack of standing.  Although the Plaintiffs did not initially contest the district court's ruling on appeal by addressing their standing to assert a preemption claim, we exercise our discretion to consider their arguments nonetheless.  The only form of injury that the Plaintiffs assert in support of their standing to make this preemption claim is the invasion of a putative statutory right conferred on them by § 1623.  However, we conclude that § 1623 does not vest any federal right in nonresident citizen students like the Plaintiffs to assert preemption.  We therefore conclude that the Plaintiffs cannot claim such a right as the basis of an injury supporting standing.  Thus, they lack standing to pursue their preemption claim, and we affirm its dismissal.

The Plaintiffs have disclaimed on appeal any injury other than an invasion of the legal right that they assert § 1623 has vested in them and any remedy other

---

[6]In their Amended Complaint, the Plaintiffs denominated Count 2 as "Violation of 8 U.S.C. [§] 1623" and proceed to enumerate the ways in which K.S.A. § 76-731a "contravenes 8 U.S.C. [§] 1623."  The district court separated this claim for analytical purposes into (1) a claim purporting to enforce directly substantive personal rights conferred by § 1623 and (2) a claim seeking injunctive relief against § 76-731a based upon the purported preemptive effect of § 1623.  It dismissed the former claim for failure to state a claim, in that § 1623 provided no private right of action, and the latter claim for lack of standing.  The analytic distinction between these two claims is a diaphanous one, and it might well dissolve upon close inspection.  We need not decide the issue, however, as the Plaintiffs argue on appeal only that "enforcement" of § 1623 grants it the appropriate preemptive effect under the Supremacy Clause and the Plaintiffs concede they seek only invalidation of § 76-731a as relief.  Accordingly, we consider their claim under Count 2 only as one of preemption.

than the presumptive annulment of § 76-731a.[7]  It is long settled in the law that

"[t]he actual or threatened injury required by Art. III may exist solely by virtue of

'statutes creating legal rights, the invasion of which creates standing . . . .'"

Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 (1982) (quoting Warth v.

Seldin, 422 U.S. 490, 500 (1975); alteration in original).  Yet absent a statutory

right vested in these particular plaintiffs by virtue of § 1623, the Plaintiffs would

retain only a generalized interest in the Defendants' compliance with the law.

See Lujan, 504 U.S. at 573-74.

To have standing, then, the Plaintiffs must possess a private, individualized

right conferred by § 1623, and the existence vel non of a private right under §

1623 becomes the critical inquiry.  That question is as yet undecided in this or

any other circuit.  However, our precedent suggests that we may be required to

---

[7]The Plaintiffs did not abandon their assertion of standing by failing to raise it in their initial appellate brief.  They did directly raise the essence of the issue in their initial brief — i.e., whether they have a legally cognizable right under § 1623.  Further, we have the benefit of the Defendants' arguments on the threshold issue of standing presented in their response brief, and consideration of the issue thus would not prejudice them.  The question was presented below, and both sides have had the opportunity to develop fully their legal and factual arguments.  And though standing is not always a pure question of law, the issue here is one for which we have a sufficiently developed record, given that the same question of standing arises in the context of the Plaintiffs' equal protection claim. Cf. United Transp. Union v. Dole, 797 F.2d 823, 827-28 (10th Cir. 1986).  Thus, although the Plaintiffs "should have developed the issue in a more thorough and in-depth fashion in [their initial] appellate brief," id. at 827, we are not foreclosed from considering the issue by the concerns which normally prevent us from addressing a question abandoned on appeal.

defer to the Plaintiffs' assertion that such a right exists for purposes of evaluating standing, so as not to confuse standing with the merits. Accordingly, we first consider whether, at this stage of the litigation, we must accept, for standing purposes, the Plaintiffs' legal assertion that they have a private right protected by § 1623.

**A. Whether we are required to accept the Plaintiffs' assertion of a private, enforceable right under § 1623 for purposes of our review of standing.**

We addressed the propriety of testing the merits of plaintiffs' claims for purposes of evaluating standing in Initiative and Referendum Institute v. Walker, 450 F.3d 1082 (10th Cir. 2006) (en banc), cert. denied, 127 S. Ct. 1254 (2007). In Walker, groups desiring to mount a ballot initiative alleged that a Utah state constitutional provision imposing a supermajority voting requirement for initiatives concerning wildlife management violated their First Amendment right of free speech. Id. at 1085. Specifically, the plaintiffs alleged that the constitutional provision had "a chilling effect on [the plaintiffs'] speech in support of wildlife initiatives in Utah." Id. at 1088. The plaintiffs contended that this alleged First Amendment injury also established their standing to assert that claim. On a motion to dismiss, the defendants argued the plaintiffs were not injured by the state constitutional provision and thus lacked standing because their claim on the merits was incorrect. Specifically, the defendants argued "that the First Amendment does not guarantee political success or imply a right to be

-19-

heard and supported, and that the supermajority requirement place[d] no direct restriction on the speech of anyone and [left] the [p]laintiffs free to engage in full and robust political speech." Id. at 1092.

We declined to consider these merits arguments in the context of our standing review, not because they were necessarily incorrect, but because the Walker defendants had "confuse[d] standing with the merits." Id. "For purposes of standing," we noted, "the question cannot be whether the Constitution, properly interpreted, extends protection to the plaintiff's asserted right or interest," because that would be a determination of the merits of the plaintiffs' claim under the guise of an evaluation of their standing. Id. The merits issue was whether the First Amendment restricted states' abilities to impose supermajority requirements for certain initiatives. The answer to that question would necessarily resolve the standing issue, since the plaintiffs alleged an interest in pursuing an initiative covered by the challenged supermajority requirement. If the First Amendment had the scope claimed by the plaintiffs, then the plaintiffs' First Amendment rights would necessarily be violated. And it is axiomatic that a plaintiff has standing to assert that his or her First Amendment rights have been violated. Critically, however, in Walker, the plaintiffs' asserted injury and their claimed constitutional violation were one and the same. Accordingly, we refused to consider, at the threshold stage of determining standing, whether the First Amendment did or did not restrict supermajority requirements for certain

-20-

initiative efforts.  Id. at 1093.  That question must be reserved for the merits analysis.  See id. at 1098-1105.

Nevertheless, we did note that "the term 'legally protected interest' must do some work in the standing analysis . . . [and] has independent force and meaning without any need to open the door to merits considerations at the jurisdictional stage."  Id. at 1093.  But we did not explain what that independent force and meaning are, other than to offer a nonexhaustive list of situations in which an asserted "legally protected interest" is not recognized.  See id. (noting that asserted interests in continued criminal activity or in prosecution of another are not legally protected, nor is a "claimed legal right [that is] so preposterous as to be legally frivolous").

Practically speaking, Walker mandates that we assume, during the evaluation of the plaintiff's standing, that the plaintiff will prevail on his merits argument — that is, that the defendant has violated the law.  See id. ("For purposes of standing, we must assume the [p]laintiffs' claim has legal validity.").  But there is still work to be done by the standing requirement, and Supreme Court precedent bars us from assuming jurisdiction based upon a hypothetical legal injury.  See Lujan, 504 U.S. at 560.  While Walker addressed an instance in which the merits of the plaintiffs' claims mirrored the alleged standing injury, that is not always the case.  There are cases, such as the one before us here, where the alleged injury upon which the plaintiffs rely to establish standing is distinct from

the merits of claims they assert. E.g., In re Special Grand Jury 89-2, 450 F.3d 1159, 1172-73 (10th Cir. 2006) ("[A] plaintiff can have standing despite losing on the merits — that is, even though the [asserted legally protected] interest would not be protected by the law in that case."); see also Duke Power Co. v. Carolina Envt'l Study Group, Inc., 438 U.S. 59, 78-79 (1978).

Here, the issue of standing is not necessarily determined by the merits determination. The merits issue is whether K.S.A. § 76-731a is preempted by 8 U.S.C. § 1623. The standing question is whether § 1623 creates a private cause of action. Each of these issues is separate and independent, and we may determine whether the Plaintiffs here have standing to assert a private cause of action under § 1623 without reaching the merits of whether § 1623 preempts § 76-731a. See DH2, Inc. v. U.S. Securities & Exchange Comm'n, 422 F.3d 591, 592 (7th Cir. 2005) (determining that the plaintiff lacked standing because its injury was speculative, without addressing the merits of the underlying claim).

Under these conditions, Walker simply does not apply. Accordingly, we now turn to the pure standing question whether § 1623 confers a private cause of action upon the Plaintiffs.

**B. Whether § 1623 confers a private cause of action on these plaintiffs.**

The question whether a federal statute confers a private cause of action under 42 U.S.C. § 1983 — and concomitantly an injury for purposes of evaluating standing — has been treated extensively in recent years. See, e.g., Gonzaga Univ.

v. Doe, 536 U.S. 273, 282-86 (2002); Alexander v. Sandoval, 532 U.S. 275, 286-93 (2001); Blessing v. Freestone, 520 U.S 329, 340-41 (1997).

The Supreme Court in Gonzaga University analyzed the Family Educational Rights and Privacy Act (FERPA) to determine whether it conveyed a personal right to nondisclosure of educational records.  The statutory text at issue there provided that

> [n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein . . . ) of students without the written consent of their parents to any individual, agency, or organization.

Gonzaga Univ., 536 U.S. at 279 (quoting 20 U.S.C. § 1232g(b)(1)).  "[T]here is no question," the Court determined, "that FERPA's nondisclosure provisions fail to confer enforceable rights."  Id. at 287.  The text lacked critical "rights-creating" language and addressed itself to the Secretary of Education, not the individuals on whom it purportedly conferred enforceable rights.  Id.  It employed an "aggregate focus" on "institutional policy and practice, not individual instances of disclosure," and it did not express concern "with whether the needs of any particular person ha[d] been satisfied."  Id. at 288 (quotations omitted).  Further, Congress had mandated a federal enforcement mechanism, "expressly authoriz[ing] the Secretary of Education to deal with violations of the Act" by establishing an administrative review board.  Id. at 289 (citing 20 U.S.C. § 1232g(f)) (quotation, emphasis omitted).  The Court concluded that Congress had

not created personal rights under FERPA that were enforceable via § 1983.  Id. at 290.

The statute at issue in this case, 8 U.S.C. § 1623, has significant aspects of text and structure that foreclose the Plaintiffs' argument that it vests in them private rights.  Its text "entirely lack[s] the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." Gonzaga Univ., 536 U.S. at 287.  Section 1623 does not provide that "No nonresident citizen shall be denied a benefit" afforded to an illegal alien, but rather imposes a limit on the authority of postsecondary educational institutions. Cf. id. (quoting the rights-creating language of Titles VI and IX).

Moreover, § 1623 addresses itself to the institutions affected and their authority to provide benefits to illegal aliens, not to the class of nonresident citizens who incidentally benefit from its provisions.  "This focus is [a step] removed from the interests of individual students and parents and clearly does not confer the sort of '*individual* entitlement' that is enforceable under § 1983" or an implied private right of action.  Gonzaga Univ., 536 U.S. at 287 (quoting Blessing, 520 U.S. at 343).  Section 1623, like FERPA, speaks "in terms of institutional policy and practice" and employs an "aggregate" focus which "cannot 'give rise to individual rights.'"  Id. at 288 (quoting Blessing, 520 U.S. at 343-44).

-24-

Further, we observe that 8 U.S.C. § 1103(a)(1) provides in relevant part that "[t]he Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens." We do not conclude that private rights are not conferred under other provisions of the immigration code. However, the language of § 1623, in combination with § 1103(a)(1), provides further evidence that federal, not private, enforcement of § 1623 was contemplated by Congress.

Accordingly, we hold that the Plaintiffs held no legal right under § 1623 to assert preemption that was invaded by the implementation of K.S.A. § 76-731a, and the Plaintiffs' claim of such an individual legal right under § 1623 to support standing is legally invalid. Thus, the Plaintiffs lack standing to assert a preemption claim based on such a supposed individual right.

## CONCLUSION

The Plaintiffs' claim that K.S.A. § 76-731a violates the equal protection of the laws guaranteed under the Fourteenth Amendment fails for lack of standing. The Plaintiffs have failed to bring forward evidence supporting their theories of injury based upon the subsidization of resident tuition for illegal aliens. Thus, these theories of injury are too conjectural and speculative to support standing. And because the Plaintiffs cannot show that they could have qualified for the benefits of § 76-731a even were the allegedly discriminatory provision excised, they are unable to show that their other theories of injury are traceable to the

-25-

discriminatory conduct alleged or that the injuries would be redressed by a decision in the Plaintiffs' favor. They thus lack standing to bring their equal protection claim.

The Plaintiffs similarly lack standing to raise their preemption claim under 8 U.S.C. § 1623. The text and structure of § 1623 do not manifest a congressional intent to create private rights, and the Plaintiffs thus have not claimed any cognizable and individualized injury stemming from the implementation of K.S.A. § 76-731a.

Because the Plaintiffs lack standing to bring either of their claims, we lack jurisdiction to hear them. We must therefore AFFIRM the dismissal of both claims.