ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

July 23, 2009

The Honorable Rob Eissler
Chair, Committee on Public Education
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0732

Re: Whether the State of Texas may permit unauthorized aliens to receive the benefit of in-state tuition at Texas state colleges and universities (RQ-0742-GA)

Dear Representative Eissler:

You have requested that we answer the questions submitted by your colleague, Representative Leo Berman, former chair of the Committee on Elections. We were asked whether Texas "is in violation of federal law and the Equal Protection Clause of . . . the United States Constitution, by allowing illegal aliens in Texas the benefit of instate tuition in state colleges and universities to the exclusion of nonresident United States citizens."[1] Although the request does not cite to any particular provision of Texas law, we understand it to inquire about Education Code sections 54.052(a)(3) and 54.053(3). Section 54.052 governs the determination of resident status for in-state tuition eligibility at state colleges and universities in Texas and includes as a resident a person who:

(A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and

(B) maintained a residence continuously in this state for:

(i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and

(ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

TEX. EDUC. CODE ANN. § 54.052(a)(3) (Vernon 2006). To establish residency under this provision, section 54.053(3) requires a person to submit information to establish the resident status and "if the person is not a citizen or permanent resident of the United States, an affidavit stating that the person

_____

[1]Request Letter at 1 (*available at* http://www.texasattorneygeneral.gov).

will apply to become a permanent resident of the United States as soon as the person becomes eligible to apply." *Id.* § 54.053(3).

We consider here only whether sections 54.052(a)(3) and 54.053(3) violate 8 U.S.C. § 1623 and the Equal Protection Clause, the federal provisions specifically raised. Section 505 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, codified at 8 U.S.C. § 1623, provides as follows:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C § 1623(a) (2006). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution generally requires states to treat similarly situated persons in a similar manner. *See* U.S. CONST. amend. XIV, § 1. Because the request does not specify or present legal arguments as to how or why the state statutes may violate the federal law, our discussion is necessarily general.

## I.    Federal Statutory Preemption

Under the Supremacy Clause of the United States Constitution, "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to a federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)). State laws may be preempted under the Supremacy Clause by federal law in several ways. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–74 (2000) (discussing express preemption and the two categories of implied preemption, i.e., field and conflict preemption); *De Canas v. Bica*, 424 U.S. 351, 358 n.5, 360–65 (1976) (discussing preemption of immigration-related state law). The request suggests that the Texas statutes may conflict with 8 U.S.C. § 1623. *See* Request Letter at 1; *Crosby*, 530 U.S. at 372 (explaining that state law is impliedly preempted to the extent of conflict with federal law). A conflicting state statute is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or if compliance with both the state and federal law is impossible. *De Canas*, 424 U.S. at 363; *Crosby*, 530 U.S. at 372–73; *see also Villas at Parkside Partners v. City of Farmers Branch*, 496 F. Supp. 2d 757, 764–66 (N.D. Tex. 2007) (discussing the *De Canas* decision as construed by federal district courts).

Section 1623 would preempt Education Code sections 54.052(a)(3) and 54.053(3) under the conflict preemption test if these sections provide a "postsecondary education benefit" to an alien who is not lawfully present in the United States (hereinafter "unauthorized alien") on the basis of "residence," within the meaning of the federal statute, "unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623 (2006).

Section 1623, however, does not define "postsecondary education benefit" or "residence." *See id.*[2] We are not aware of any federal agency that has administratively defined these terms; nor are we aware of any federal court or state supreme court that has construed these terms or considered the substantive application of section 1623(a) to a statute similar to the Texas statutes. *See Jones v. Rath Packing Co.*, 430 U.S. 519, 526 (1977) (stating that obstacle preemption inquiry requires a consideration of the "relationship between state and federal laws as they are *interpreted and applied*, not merely as they are written") (emphasis added).

To date, the only judicial decision on this specific question is from an intermediate California state appellate court, and it is currently pending review by the California Supreme Court. *See Martinez v. Regents of Univ. of Cal.*, 83 Cal. Rptr. 3d 518 (Cal. App. 3d), *superseded by* 198 P.3d 1 (Cal. 2008) (granting respondents' petition for review on Dec. 23, 2008).[3] In *Martinez v. Regents of University of California*, the court of appeals held that a California statute exempting unauthorized aliens from paying nonresident tuition at certain state colleges and universities[4] provided a benefit on the basis of residence in violation of 8 U.S.C. § 1623, and was thus preempted by the federal law. *See Martinez*, 83 Cal. Rptr. 3d at 540–45. The court construed "benefit" in 8 U.S.C. § 1623 to include in-state tuition, rejecting the argument that it means only payment of money or direct financial assistance. *See id.* at 531–33. The court also determined that the state statute requiring attendance at a California high school for at least three years created a de facto residence requirement and thus conferred a benefit to unauthorized aliens on the basis of residence in California. *Id.* at 537–40. Finally, the *Martinez* court determined, because the California statute did not provide in-state tuition to United States citizens from other states "'without regard to' California residence, [the statute] conflicts with . . . 8 U.S.C. section 1623." *Id.* at 540. Accordingly, the *Martinez* court concluded, the California statute was preempted to the extent of the conflict because it was

---

[2]A provision in the related Personal Responsibility and Work Opportunity Reconciliation Act of 1996, codified at 8 U.S.C. § 1621(c), defines "state or local benefits" as

> any retirement, welfare, health, disability, public or assisted housing, *postsecondary education*, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government.

8 U.S.C. § 1621(c)(1)(B) (2006) (emphasis added). Section 1621 does not further define "postsecondary education benefit."

[3]Under California court rules, if the California Supreme Court grants review, a court of appeals' opinion may be treated as an unpublished opinion or a partial publication. *See* Cal. R. Ct. 8.1105(e), 8.1110, 8.1115. Pursuant to California's Rules of Court, *Martinez* has been certified for partial publication. *See Martinez*, 83 Cal. Rptr. 3d at n.* (providing that the "opinion is certified for publication with the exception of parts II and III of the DISCUSSION"); Cal. R. Ct. 8.1110 (concerning partial publication).

[4]The California statute provides that to qualify for in-state tuition rates, (1) students must have attended high school in California for a least three years; (2) they must have graduated from a California high school or attained the equivalent thereof; and (3) unauthorized alien students must submit an affidavit that they have either filed an application to legalize status or will file such an application as soon as they become eligible. *Martinez*, 83 Cal. Rptr. 3d at 522 n.1.

impossible for universities and colleges to comply with both federal and state law, and because "it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 541–42.[5]

It is possible that another court could follow the reasoning of the *Martinez* decision. However, a California Supreme Court decision would not bind a federal or state court in Texas, and no other court has considered the validity under federal law of a state statute authorizing in-state tuition for unauthorized aliens.[6] Thus, while a federal or state court in Texas could find that 8 U.S.C. § 1623 preempts Education Code sections 54.052(a)(3) and 54.053(3) to the extent of the conflict with the federal law, given the paucity of judicial precedent, we cannot predict with certainty that a court would so find.

## II.     Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The constitutional equal protection guarantee requires that similarly situated persons be treated similarly under the law; it does not preclude a state from adopting legislation classifying persons for "one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 271–72 (1979)). The question presented suggests that unauthorized aliens and nonresident United States citizens are similarly situated, but treated unequally with respect to eligibility for the benefit of in-state tuition under Texas law. *See* Request Letter at 1. Because the request does not specify or present legal arguments as to how or why the state statutes violate the equal protection guarantee, our discussion is necessarily general.

First, on their face, Education Code sections 54.052(a)(3) and 54.053(3) do not allow unauthorized aliens a benefit denied to nonresident United States citizens. *See* TEX. EDUC. CODE

---

[5]The *Martinez* court looked at the Congressional objective as stated in 8 U.S.C. § 1601 regarding the national policy with respect to immigration: "the availability of public benefits [should] not constitute an incentive for immigration to the United States" and "[i]t is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." *Martinez*, 83 Cal. Rptr.3d at 542; 8 U.S.C. 1601(2)(B), (6) (2006).

[6]In *Day v. Sebelius*, the federal district court dismissed equal protection and preemption challenges to a Kansas in-state tuition statute similar to the Texas statutes on the grounds that the out-of-state plaintiffs lacked standing because they were not injured as a result of the state law and there existed no private right of action under the federal statute. *See Sebelius*, 376 F. Supp. 2d 1022, 1034, 1039 (D. Kan. 2005). The Tenth Circuit Court of Appeals affirmed the dismissal. *Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 2987 (2008). In rejecting the out-of-state plaintiffs' equal protection standing claim, the circuit court determined that the plaintiffs' alleged injury—having to pay nonresident tuition—would not be redressed by a decision in the plaintiffs' favor because they still would not qualify for in-state tuition. *Bond*, 500 F.3d at 1139. Regarding the plaintiffs' preemption standing claim, the circuit court concluded that "the text and structure of § 1623 do not manifest a congressional intent to create private rights, and the Plaintiffs thus have not claimed any cognizable and individualized injury stemming from the implementation of [the Kansas statute]." *Id.* at 1139–40.

ANN. §§ 54.052(a)(3), .053(3) (Vernon 2006). Nonresident United States citizens can obtain the benefit of sections 54.052(a)(3) and 54.053(3) by graduating from a Texas high school or obtaining the equivalent of a Texas high school diploma; and living continuously in Texas for the three years preceding the graduation or receipt of the diploma and the year before the census date of the term of enrollment in a Texas college or university. *See id.* § 54.052(a)(3).

Second, high school attendance and residency requirements by themselves would not violate the equal protection guarantee. The United States Supreme Court has approved "bona fide residency requirements in the field of public education." *Martinez v. Bynum*, 461 U.S. 321, 326–27 (1983). Additionally, the Court has recognized "that a State has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis." *Vlandis v. Kline*, 412 U.S. 441, 452–53 (1973). "This 'legitimate interest' permits a 'State [to] establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact bona fide residents of the State, but who have come there solely for educational purposes, cannot take advantage of the in-state rates.'" *Bynum*, 461 U.S. at 327 (quoting *Vlandis*, 412 U.S. at 453–54). An appropriately defined bona fide residence requirement uniformly applied furthers "the substantial state interest in assuring that services provided for [a state's] residents are enjoyed only by residents[,]" and "[s]uch a requirement with respect to attendance in public free schools does not violate the Equal Protection Clause." *Id.* at 328. Finally, such a requirement does not burden or penalize a fundamental right protected by the Constitution or implicate a suspect classification requiring strict scrutiny. *Id.* at 328–29 & n.7; *see also Plyler v. Doe*, 457 U.S. 202, 221–23 (1982) ("[p]ublic education is not a 'right' granted to individuals by the Constitution") (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973)).[7]

Accordingly, a federal or state court in Texas would likely conclude that Education Code sections 54.052(a)(3) and 54.053(3) do not facially violate the Equal Protection Clause because the statutory prerequisites for in-state tuition are reasonable requirements that serve Texas's legitimate or substantial interest in assuring that only bona fide residents that graduate or receive diplomas from Texas high schools are eligible for in-state tuition. However, as with the issue of preemption, we caution that no court has addressed whether a statute similar to the Texas statutes conforms to the mandates of the Equal Protection Clause.[8]

---

[7]If a legislative classification targets a suspect class or impacts a fundamental right "it will be strictly scrutinized and upheld only if it is precisely tailored to further a compelling government interest." *Sonnier v. Quarterman*, 476 F.3d 349, 368 (5th Cir. 2007) (citing *Plyler*, 457 U.S. at 217–18). If the legislative classification "neither burdens a fundamental right nor targets a suspect class," it will be upheld "so long as it bears a rational relation to some legitimate end." *Romer*, 517 U.S. at 631.

[8]The California appellate court in *Martinez* did not determine that the similar California statute violated the Equal Protection Clause. *See* Request Letter at 1 ("the Third District Court of Appeals in California ruled that California law conflicts with federal law and the Equal Protection Clause"). It merely allowed the plaintiffs in the case to amend their complaint regarding the equal protection claim. *See Martinez*, 83 Cal. Rptr. 3d at 545–46. In discussing the equal protection claim, the *Martinez* court, in fact, observed that the "high school attendance requirement of [the California statute] is not troubling in and of itself, because a state may favor its own residents." *Id.* at 545.

## S U M M A R Y

Education Code sections 54.052(a)(3) and 54.053(3) would conflict with and thus be preempted by section 505 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, codified at 8 U.S.C. § 1623, if the state statutes provide a "postsecondary education benefit" to an alien who is not lawfully present in the United States on the basis of "residence," within the meaning of the federal statute, "unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (2006). However, the terms "postsecondary education benefit" and "residence" are not defined in the federal law. In addition, no Texas or federal court has construed these terms or considered the substantive application of the federal law to a statute similar to the Texas statutes. Thus, while a federal or state court in Texas, following the reasoning of an intermediate California state appellate court decision, could find that 8 U.S.C. § 1623 preempts Education Code sections 54.052(a)(3) and 54.053(3) to the extent of the conflict with the federal law, given the paucity of judicial precedent, this office cannot predict with certainty that a court would so find.

The United States Supreme Court has "approved bona fide residency requirements in the field of public education." *Martinez v. Bynum*, 461 U.S. 321, 326–27 (1983). Additionally, the Court has recognized "that a State has a legitimate interest in protecting and preserving the quality of its colleges and universities and the right of its own bona fide residents to attend such institutions on a preferential tuition basis." *Vlandis v. Kline*, 412 U.S. 441, 452–53 (1973). "This 'legitimate interest' permits a 'State [to] establish such reasonable criteria for in-state status as to make virtually certain that students who are not, in fact, bona fide residents of the State, but who have come there solely for educational purposes, cannot take advantage of the in-state rates.'" *Bynum*, 461 U.S. at 327 (quoting *Vlandis*, 412 U.S. at 453–54).

Accordingly, a federal or state court in Texas would likely conclude that Education Code sections 54.052(a)(3) and 54.053(3) do not facially violate the federal Equal Protection Clause because the statutory prerequisites for in-state tuition are reasonable requirements that serve Texas's legitimate or substantial interest in assuring that only bona fide residents that graduate from Texas high schools or receive the diploma equivalent from this state are eligible for in-state

tuition. However, no court has addressed whether a statute similar to the Texas statutes conforms to the mandates of the Equal Protection Clause.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee