FILED
United States Court of Appeals
Tenth Circuit

**March 4, 2026**

**Christopher M. Wolpert
Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

MARK ENSMINGER,

    Plaintiff - Appellant,

v.

CREDIT LAW CENTER, LLC,
a/k/a Thomas Andrew Addleman L.L.C.,
d/b/a Credit Law Center; THOMAS
ADDLEMAN, a/k/a Tom Addleman,

    Defendants - Appellees.

No. 25-3009
(D.C. No. 2:19-CV-02147-TC)
(D. Kan.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **MATHESON**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and
**BACHARACH**, Circuit Judge.

_____

Mark Ensminger sued Credit Law Center, LLC, and its founder,

Thomas Addleman (collectively, "CLC"), claiming violations of the Credit Repair

Organization Act, 15 U.S.C. §§ 1679–1679j ("CROA"), and state tort law. His complaint

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It may
be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

asserted three claims for violation of the CROA, including one that alleged CLC improperly accepted payment in advance of services.  The district court dismissed all but this one claim.  It later entered summary judgment in favor of CLC on this claim, concluding that Mr. Ensminger lacked standing because he did not suffer a concrete injury.  Mr. Ensminger appeals the standing determination.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

### A. *Legal Background*

Congress enacted the CROA "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations."  15 U.S.C. § 1679(b)(2).  It prohibits payments in advance of services: "No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."  § 1679b(b).  Under the CROA, CLC is a "credit repair organization," and Mr. Ensminger is a "consumer."  *See* § 1679a(1), (3).

### B. *Factual History*

On February 27, 2015, Mr. Ensminger executed a written Engagement Agreement with CLC to have it perform credit repair services.  Under the Agreement, he authorized CLC to charge his credit card $300 for a retainer.  A "retainer" is "[a]n advance payment of fees for work that [a] lawyer will perform in the future."  *Retainer*, Black's Law Dictionary (12th ed. 2024).  The Agreement states, "Other than the retainer, I understand that I will only be charged after [CLC] document[s] that the negative items were repaired

2

or removed from my credit reports." Aplt. App., vol. II at 102. CLC charges $65 for the removal of each item from a credit report. *See id.* at 101. The repair or removal of an item from a credit report is a "billable event," which occurs when CLC obtains an updated credit report, verifies the correction or deletion of a trade line on the report, and issues an invoice. *Id.*, vol. III at 16 ¶ 48.

On March 4, 2015, after Mr. Ensminger signed the Agreement, CLC sent letters to credit reporting bureaus challenging entries on his credit report. On March 6, CLC collected his $300 retainer.[1] On April 10, CLC obtained an updated credit report for Mr. Ensminger and determined that six false debts had been deleted, so it invoiced him for $390 ($65 for each of the six deletions), plus an administrative fee of $95, for a total of $485. *Id.*, vol. II at 317. CLC applied his $300 retainer and billed him for the remaining balance of $185. On April 24, CLC sent additional letters to creditors on his behalf. And on June 3, CLC issued him a final invoice.

### C. *Procedural Background*

Based on these events, Mr. Ensminger filed a class action complaint, asserting three claims under the CROA (Counts I, II, and III) and one state-law claim for breach of fiduciary duty (Count IV). On CLC's motion, the district court dismissed Counts II and III for lack of standing, and Count IV for failure to state a claim. But the court declined

---

[1] CLC does not collect the retainer until after it sends letters to the collection bureaus. *See* Aplt. App., vol. I at 162, ¶ 17 ("[W]ithin 24 business hours (i.e., 3 days) of the client signing the Engagement Agreement, CLC prepares and sends out letters challenging specific items to the three credit reporting bureaus."); *id.*, vol. III at 263, ¶ 16(c) (same); *id.* at 15, ¶ 37 (indicating retainers are usually collected seven days after the date of the Agreement); *id.* at 68 (same).

to dismiss Count I, ruling that Mr. Ensminger had standing to pursue that claim because, according to the pleadings, he lost the time value of his money between March 6, when CLC collected his $300 retainer, and April 10, when CLC confirmed the six false debts had been deleted from his credit report.

The district court granted Mr. Ensminger leave to amend his complaint to bolster his allegations of standing and denied a second motion to dismiss on the same ground it denied the first one—that Mr. Ensminger had lost the time value of his retainer. The court reached the same conclusion a third time when it certified the class.

But at summary judgment, the district court ruled that Mr. Ensminger lacked standing on Count I. Citing evidence rather than the allegations, the court determined Mr. Ensminger did not suffer a concrete injury because CLC performed services on March 4 when it sent letters to credit reporting bureaus. The court observed that these services, which were valued in excess of the retainer, were performed before CLC collected the retainer on March 6, so he was not denied the time value of money, suffered no concrete injury, and therefore lacked standing.

## II.  DISCUSSION

### A.  *Standard of Review*

"We review a grant of summary judgment de novo, applying the same standard for summary judgment that applied in the district court." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1159 (10th Cir. 2023) (internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

4

Fed. R. Civ. P. 56. "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Day v. Bond*, 500 F.3d 1127, 1131-32 (10th Cir. 2007) (internal quotation marks omitted). "To prevail at summary judgment on standing grounds, the defendant must show that the record is devoid of evidence raising a genuine issue of material fact that would support the plaintiff's ultimate burden of proving standing." *Id.* at 1132.

### B. *Article III Standing*

Article III judicial power to resolve "Cases" and "Controversies" requires that a "plaintiff . . . have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks omitted). To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The injury-in-fact element requires that a plaintiff have "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotation marks omitted).

"Congress may create causes of action for plaintiffs to sue defendants who violate . . . legal prohibitions or obligations." *TransUnion*, 594 U.S. at 427. "But under Article III, an injury in law is not an injury in fact," *id.*, and "a statutory violation does not necessarily establish injury in fact," *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022). Although monetary harm qualifies as a concrete injury, it must be "real, and not abstract." *TransUnion*, 594 U.S. at 424 (internal quotation marks omitted). As the party

invoking federal jurisdiction, Mr. Ensminger must demonstrate he has Article III standing. *See id.* at 430-31.

## C. *Analysis*

The issue is whether Mr. Ensminger suffered a concrete injury that gives him standing for his remaining CROA claim. He contends he has standing because CLC violated the CROA by collecting his retainer on March 6, which occurred before the first billable event on April 10 when CLC obtained an updated credit report and verified the deleted trade lines. *See* Aplt. Br. at 35-37; *see also id.* at 36 (quoting Aplt. App., vol. II at 102 (Engagement Agreement, stating, "Other than the retainer, I understand I will only be charged after [CLC] document[s] that the negative items were repaired or removed from my credit reports.")). Mr. Ensminger argues that the CROA's anti-waiver provision "prevent[s] credit repair organizations from contracting around any of the statute's requirements." *Id.* at 28 (citing 15 U.S.C. § 1679f(a), (c)).[2] Relying on this anti-waiver provision, he says he was injured because he lost the time value of his retainer from

---

[2] 15 U.S.C. § 1679f states:

**(a) Consumer waivers invalid**
Any waiver by any consumer of any protection provided by or any right of the consumer under this subchapter –
  (1) shall be treated as void; and
  (2) may not be enforced by any Federal or State court or any other person.
     . . . .
**(c) Contracts not in compliance**
Any contract for services which does not comply with the applicable provisions of this subchapter –
  (1) shall be treated as void; and
  (2) may not be enforced by any Federal or State court or any other person.

March 6 through April 10 when he could have earned interest or used it to pay down his car loan. *Id.* at 27-28.

Courts have determined that loss of the time value of money can be an injury in fact. *See, e.g., In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010). And although the district court found the loss of time value of $300 for 36 days was "less than a dollar or two," Aplt. App., vol. V at 14, the Supreme Court has recognized *de minimis* losses can constitute a concrete injury. *See United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973) ("[A]n identifiable trifle is enough for standing to fight out a question of principle[.]").

CLC responds that no authority "hold[s] that losing the time value of money constitutes a concrete injury where the plaintiff received fair value prior to parting with it." Aplee. Br. at 25. That is what happened here. CLC emphasizes that on March 4, when it sent the letters to credit bureaus, Mr. Ensminger received services in excess of his retainer collected on March 6. So regardless of when CLC verified the deletion of the false entries from his credit report, Mr. Ensminger suffered no injury because he had already received services valued in excess of and before he paid his retainer.

CLC has the better argument. When CLC sent the dispute letters to the credit bureaus on March 4, he received $390 worth of services. *See* Aplt. App., vol. II at 101 (Engagement Agreement charging $65 per removal of collection trade lines from a credit report); *id.* at 317 (itemized invoice reflecting deletion of six collection trade lines,

7

totaling $390 in services); *id.*, vol. III at 201-02 (progress report noting March 4, 2015, deletion of six trade lines valued at $65 each). Because he received the services before he paid, he fails to show a concrete injury. *See Spokeo*, 578 U.S. at 340 ("A 'concrete' injury must be '*de facto*'; that is, it must actually exist.").

Mr. Ensminger contends the district court conflated the standing analysis with the merits of his CROA claim. But he is the one conflating. The court plainly and repeatedly refused to consider the merits of his CROA claim, correctly recognizing that "when assessing standing, federal courts are not to 'open the door to merits considerations at the jurisdictional stage.'" Aplt. App., vol. V at 10 (quoting *Smith*, 121 F.4th at 1378); *see id.* at 16 n.3 ("Because wading into the merits of whether the facts support a violation [of the CROA] is not proper when considering standing, that issue cannot be[] substantively considered."). "The threshold standing inquiry in no way depends on the merits of a plaintiff's contention that the challenged conduct is illegal." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 n.10 (10th Cir. 2004).

Mr. Ensminger also contends the district court's standing analysis misunderstood his claim as sounding in contract. *See* Aplt. Br. at 38-47. He points to the court's citing *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315, 320 (5th Cir. 2002), to conclude he suffered no concrete injury because he received the benefit of his bargain. But the court concluded that Mr. Ensminger suffered no pecuniary harm by paying for services that CLC had already provided on March 4, citing *Rivera* for the proposition that a "plaintiff lack[s] a concrete injury where she received the benefit of the bargain." Aplt. App., vol. V at 16.

## III.  **CONCLUSION**

We affirm the district court's judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge